THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL McCORMICK, Defendant-Appellant.

First District (4th Division)   No. 1—01—3628

Opinion filed May 22, 2003.—Rehearing denied June 25, 2003.

Robert L. Schroeder, Ltd., of Oak Park, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, John Nowak, and David C. Herrera, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Paul McCormick was found guilty of aggravated driving under the influence of alcohol (DUI) and felony driving with a revoked or suspended license and sentenced, based on his criminal history, to an extended prison term of five years. On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt because the evidence was insufficient to support a finding that he was driving the vehicle at the time of his arrest. He further contends that the trial court erred when it sentenced him to an extended term for aggravated DUI.

BACKGROUND

Defendant's conviction arose from an incident on December 17, 2000, in which defendant was involved in a car accident with another vehicle.

At trial, Chicago police officer Patrick Rooney testified that he and his partner, Officer Thomas Barrett, were on a routine patrol at the time of the accident. While stopped at a red light at 31st Street, facing southbound on Wentworth Avenue, Officer Rooney heard a collision. He looked forward and saw two vehicles, a red car and a van, "spinning out." The vehicles were across the street, approximately 30 feet from Officer Rooney's police car. When the vehicles came to a stop, Officer Rooney turned on his lights and sirens and proceeded through the intersection. Officer Rooney stated that he saw defendant exit the driver's side of the red car, walk around the car, stumble to the passenger's door, and enter the passenger's side of the car.

Officer Rooney initially saw defendant in the driver's seat when the police car was 5 to 10 feet from the red car and there was nothing obstructing Officer Rooney's view. When defendant opened the passenger's side door, he pushed the woman in the passenger's seat and slid underneath her, but defendant could not close the door completely. Officer Rooney approached the car and described the woman as

"handicapped," "a midget," and bleeding from the top of her head. Officer Rooney saw that the car's windshield was "spider webbed" on the passenger's side where it appeared that the woman had hit her head. The police officers called for an ambulance and asked defendant to exit his car.

When defendant exited the car, Officer Rooney noticed that defendant had bloodshot eyes, slurred speech, smelled of alcohol, and stumbled, using cars for support. Defendant first told Officer Rooney that he was not hurt, but once defendant was placed under arrest, he said he wanted to go to the hospital. Defendant was taken to the hospital by ambulance and Officer Rooney arrived at the hospital later. In a conversation in the emergency room at 7 p.m., defendant was read his *Miranda* rights, and he told Officers Rooney and Barrett that he had been driving the car. Defendant admitted to drinking two beers, and he stated that he remembered the collision.

Officer Rooney also met with Lisa McCauley, the female occupant of the car, at 7 p.m. while he was at the hospital. He noticed that she smelled of alcohol, her eyes were bloodshot, and her speech was slurred. Officer Rooney stated that he never saw McCauley in the driver's seat of the car. Officer Rooney further stated that the occupants of the van involved in the collision were treated at the hospital. He recalled that the driver's name was Ruben and there were two civilian witnesses named Janice and Tysha.

On cross-examination, Officer Rooney stated that he did not see defendant driving prior to the accident. The first time Officer Rooney saw defendant, defendant was exiting the driver's side of the car. Officer Rooney stated that he did not sign any accident reports. He did not see the accident, but he stated that it occurred at dusk. Officer Rooney stated that he had looked at the interior of the red car, but he did not look at the gas or brake pedals. He stated that McCauley was sitting in the passenger's seat, sprawled out with her head toward the driver's seat, when he first saw her. When Officer Rooney asked McCauley about her injuries, she moaned without communicating an answer. Defendant did not admit to driving the car at the scene or when he was initially asked following his arrest.

On redirect examination, Officer Rooney stated that defendant maintained he had not been driving the car when he was asked at the scene of the accident. Officer Rooney described defendant as being "very combative," yelling, and evading questions at the scene.

The parties stipulated that defendant was admitted to the hospital at 6:35 p.m. on December 17, 2000. A blood sample was collected within an hour of defendant's admission, and the results of the testing indicated that defendant's blood-alcohol level was .231 grams per deciliter.

The parties also stipulated that defendant was arrested on January 17, 1984, for driving under the influence of alcohol and he was placed on supervision for that violation. Defendant was then arrested and convicted for driving under the influence of alcohol on September 6, 1987, June 21, 1991, and March 31, 1992. Defendant was also convicted of driving while his driver's license was suspended or revoked on March 31, 1992. On June 15, 1999, defendant was arrested and convicted of driving on a revoked or suspended license.

The parties further stipulated that on the date of this collision, December 17, 2000, defendant's driver's license was revoked.

Chicago police officer Thomas Barrett testified for the defense that he was with Officer Rooney and he did not see the car accident occur. After the impact, Officer Barrett looked to the car and saw defendant behind the wheel of the car. Officer Barrett prepared and signed the accident report after speaking with defendant and McCauley. The report indicated that defendant was a driver in the accident.

When Officer Barrett saw defendant run over to McCauley's side of the vehicle, he assumed that she was severely injured and defendant was assisting her. Officer Barrett stated that McCauley was "highly intoxicated," and he described her as being a "very short midget, possibly a dwarf." When Officer Barrett first saw McCauley, she was on the passenger's side of the car. According to Officer Barrett, McCauley was "crushed into the seat" so that the fire department had to cut her out, and defendant was in the passenger's seat with McCauley. Officer Barrett viewed the inside of defendant's car and did not notice any special equipment.

Officer Barrett stated that he spoke with the driver of the van involved in the collision. When Officer Barrett asked defendant if he had been driving, defendant denied driving. Defendant did not appear injured, and he did not tell Officer Barrett that he was injured, but defendant left the scene in an ambulance.

Lisa McCauley testified that she was driving her own car at the time of the accident, and defendant was a passenger. She further stated that defendant was her fiancé. She stated that her car had extensions attached to the gas and brake pedals, which were bolted in place at the time of the accident. She stated that she never saw defendant drive her car and that a person of defendant's height could not safely drive a car with such adaptations. She stated that after the impact, her body moved to the passenger's side of the car, landing on top of defendant. She maintained that she told the police officers several times that she was the driver.

On cross-examination, McCauley stated she was not wearing a seat belt during the accident. She stated that her head hit the

windshield and then her upper body landed on the dashboard. McCauley said that she consumed two or three alcoholic beverages earlier in the day, around 2:30 p.m.

Defendant testified that he was a passenger in McCauley's car during the accident. He stated that he exited the passenger's side of the car, walked around the car to the driver's side to dislodge McCauley, and then he went "back around."

On cross-examination, defendant stated that he had at least two beers while he was home prior to the accident and a few mixed drinks earlier with lunch in the mid-afternoon. Defendant stated that he spoke with police officers at the hospital, where he received pain medication for an injured knee. He did not recall telling the police that he was driving "head-on" at the time of the accident.

In rebuttal for the State, Janice Benson testified that she was a passenger in the second row of the van involved in the collision. Just prior to the collision, Benson saw a small woman in the passenger's seat of the car that the van collided with. Benson identified this woman in court to be McCauley.

In surrebuttal for defendant, Ruben Reeves testified that he was the driver of the van, and he could not positively say who was driving the car that collided with his van. He had seen the car before the accident, and the car had been traveling eastbound on 31st Street. Reeves had been driving westbound on 31st Street and he stopped to make a left turn. The car came straight towards Reeves' van and nothing was blocking his view of the car.

In finding defendant guilty, the trial court stated that there was "no doubt *** that the driver of the vehicle on December 17th was the defendant, as charged in the indictment." The court relied on the testimony of Officer Rooney and the circumstantial evidence of the broken windshield, which it found to corroborate the State's position that McCauley was the passenger. It also relied on defendant's admission of drinking and driving provided at the hospital. Although Officer Rooney did not see defendant driving or behind the wheel, the court found it reasonable to infer that defendant had been driving the car. The stipulated evidence regarding defendant's blood-alcohol level confirmed Officer Rooney's conclusion that defendant was under the influence of alcohol.

Additionally, the trial court found that Officer Barrett corroborated the evidence introduced by the State. The trial court found that McCauley was "not credible at all" as she had "an obvious bias." Defendant's testimony was "absolutely incredible" in contrast to the physical evidence, the testimony of the two officers, and the testimony of Benson that McCauley had been in the passenger's seat prior to the impact.

At the sentencing hearing, defendant presented witnesses in mitigation. The State offered defendant's prior DUI violations into evidence, which under section 11—501(d)(1)(A) of the Illinois Vehicle Code (the Vehicle Code), enhanced the offense from a Class A misdemeanor to a Class 4 felony (625 ILCS 5/11—501(d)(1)(A) (West 2000)). The court then sentenced defendant to five years in prison, citing his "1997 Class 2 or greater felony conviction" for possession of a stolen motor vehicle as the basis for the extended term.

ANALYSIS

Defendant contends that he was not proven guilty beyond a reasonable doubt because the evidence was insufficient to support a finding that he was driving the car involved in the collision. He argues that no rational trier of fact could have found beyond a reasonable doubt that he was the driver of McCauley's car.

■ In reviewing the sufficiency of the evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cox*, 195 Ill. 2d 378, 387, 748, 166 Ill. 2d 172 (2001). A reviewing court is not permitted to substitute its judgment for that of the trier of fact. *People v. Ortiz*, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 424 (2001). It is the function of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony, to resolve conflicts in the evidence and to draw reasonable inferences from the evidence. *Ortiz*, 196 Ill. 2d at 259, 752 N.E.2d at 424. Although the determinations of the trier of fact are not conclusive, they are entitled to great deference, and a conviction will be overturned only where the evidence "is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *Ortiz*, 196 Ill. 2d at 259, 752 N.E.2d at 424.

■ Here, the trial judge properly determined that Officer Rooney was a credible witness based on his trial testimony, and it accepted the inferences flowing from the State's evidence. Officer Rooney stated that he saw defendant exit the driver's side of the car and he saw that the windshield was broken on the passenger's side. Officer Rooney's belief that defendant drove the car and that McCauley was sitting in the passenger's seat was corroborated by defendant's admission, Officer Barrett's testimony, and the testimony of a passenger in the van. Viewing the evidence in a light most favorable to the prosecution, there was ample evidence from which a trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt.

Defendant next contends that the trial court erred in sentencing

him to an extended term for aggravated DUI. He argues that the sentence it imposed is in excess of that which is provided for in section 11—501(d)(2) of the Illinois Vehicle Code (625 ILCS 5/11—501(d)(2) (West 2000)), relying on *People v. Mathews*, 304 Ill. App. 3d 514, 520, 711 N.E.2d 435, 438 (1999). In *Mathews*, the defendant was sentenced to an extended term of six years' imprisonment for aggravated DUI, and he argued that the language of section 11—501(d)(2) precluded extended-term sentencing for the offense of aggravated DUI.

■ Section 11—501(d)(2) provides in pertinent part:

"Aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof is a Class 4 felony for which a person, if sentenced to a term of imprisonment, shall be sentenced to not less than one year and not more than 3 years for a violation of subparagraph (A), (B) or (D) of paragraph (1) of this subsection (d) and not less than one year and not more than 12 years for a violation of subparagraph (C) of paragraph (1) of this subsection (d)." 625 ILCS 5/11—501(d)(2) (West 2000).

The Fifth District Appellate Court concluded that the language of section 11—501(d)(2) was clear and unambiguous. *Mathews*, 304 Ill. App. 3d at 519-20, 711 N.E.2d at 439. The court noted that section 11—501(d)(2) provides that aggravated DUI is a Class 4 felony "and then goes on to specify a sentence range." *Mathews*, 304 Ill. App. 3d at 520, 711 N.E.2d at 439. The court reasoned that this departure from the normal sentencing scheme, which is generally provided in section 5—8—1 of the Unified Code of Corrections (730 ILCS 5/5—8—1 (West 2000)), and the inclusion of a sentencing range within the Illinois Vehicle Code must mean that the legislature intended that the sentence for the offense of aggravated DUI be different from that normally applicable to Class 4 felonies. *Mathews*, 304 Ill. App. 3d at 520, 711 N.E.2d at 439. Therefore, the court concluded that "[a] person guilty of aggravated DUI and sentenced to a term of imprisonment shall be sentenced to a term of not less than one and not more than three years. The language of the statute precludes the imposition of an extended-term sentence." *Mathews*, 304 Ill. App. 3d at 520, 711 N.E.2d at 439.

We believe the Fifth District Appellate Court's holding that the legislature intended to preclude imposition of extended-term sentences for aggravated DUI creates an anomalous interpretation of both section 11—501(d)(2) and the extended-term statute, and that when properly viewed in the context of the entire sentencing scheme, section 11—501(d)(2) does not preclude the application of an extended-term sentence. See *People v. Granados*, 172 Ill. 2d 358, 666 N.E.2d

1191 (1996) (supreme court affirmed extended-term sentence imposed upon defendant convicted of aggravated DUI due to prior felony convictions); *People v. Niemeyer*, 243 Ill. App. 3d 875, 612 N.E.2d 975 (1993) (extended-term sentence was proper where defendant was convicted of aggravated DUI and also had prior felony burglary conviction).

■ We agree with *Mathews* that the cardinal rule of statutory construction is to ascertain and give effect to the intention of the legislature. *People v. Woods*, 193 Ill. 2d 483, 487, 739 N.E.2d 493, 495 (2000). However, we do not agree that the mere fact that the sentencing range is defined in the Vehicle Code clearly establishes that it precludes the imposition of an extended-term sentence. Instead, we are guided by the principle that where there is any ambiguity, statutes are to be read *in pari materia*, which means that two legislative acts that address the same subject are to be considered with reference to one another, so that they may be given harmonious effect. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422, 781 N.E.2d 249, 254 (2002). Thus, where both the Illinois Vehicle Code and the Unified Code of Corrections are instructive on the issue of sentencing, they must be read *in pari materia* as part of an overall sentencing scheme for aggravated DUI.

■ Section 11—501(d)(1)(A) of the Vehicle Code enhances a misdemeanor DUI offense to aggravated DUI if "the person committed a violation of this Section *** for the third or subsequent time." 625 ILCS 5/11—501(d)(1)(A) (West 2000). Section 11—501(d)(2) of the Vehicle Code further provides that aggravated DUI is a Class 4 felony and specifically sets forth a sentencing range of not less than one year and not more than three years' imprisonment. 625 ILCS 5/11—501(d)(2) (West 2000). Additionally, pursuant to section 5—5—3.2(b)(1) of our Unified Code of Corrections (730 ILCS 5/5—5—3.2(b)(1) (West 2000)), an extended-term sentence may be imposed when a defendant:

> "[I]s convicted of *any felony*, after having been previously convicted *** of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts[.]" (Emphasis added.) 730 ILCS 5/5—5—3.2(b)(1) (West 2000).

In *People v. Hicks*, 164 Ill. 2d 218, 223, 647 N.E.2d 257, 260 (1995), our supreme court held that the plain language of the extended-term sentencing provision explicitly states that it applies to "any felony," and that the words "any felony" are broad in scope. The statutory provision makes no exception for felonies arising out of the Vehicle

Code. Thus, once any felony offense has been committed, the extended-term statutory provisions may be invoked. Under this analysis, unlike *Mathews*, both statutes are given effect and both function in a harmonious manner.

■ Furthermore, this statutory interplay is consistent with the objectives that underlie the enactment of the extended-term statute. As stated in *Hicks*, "[o]ur extended-term sentencing provision is designed to increase the length of imprisonment, where the defendant has a criminal record of prior felonies, in order to punish and deter recidivist behavior." *Hicks*, 164 Ill. 2d at 224, 647 N.E.2d at 260. There is nothing in this objective that is at odds with the inclusion of aggravated DUI within the purview of the extended-term sentencing provision. Additionally, when construing a statute, courts must assume that the legislature did not intend an absurd result. *People v. Bennett*, 329 Ill. App. 3d 502, 517, 769 N.E.2d 117, 129 (2002). To exempt third and subsequent DUI offenses from the possibility of an extended-term sentence would give recidivist drunk drivers assurances that no increased penalties could be incurred for any subsequent convictions following a third DUI offense. The legislature could not have intended such a result.

The recent legislative amendments to section 11—501(d)(2) (Pub. Act 92—420, eff. August 17, 2001) lend further support to our holding. Under the amended statute, the legislature has deleted the language which provides that the sentence for a felony DUI conviction shall be not less than one and no more than three years. Speaking in support of the amendment, Senator Dillard explained:

> "This amends the Vehicle Code by deleting language limiting a sentence of a term of imprisonment for a felony DUI conviction to one to three years and makes certain defendants who are convicted of a felony DUI [are] eligible for an extended-term sentence. What we're doing here is clarifying something that came out of an appellate court decision. This is an initiative of the Du Page County State's Attorney, and essentially we're trying to clarify what I think a number of State's [A]ttorneys believed was already the law. And there's been a limited reading by one appellate court, and we just want to clarify it." 92d Ill. Gen. Assem., Senate Proceedings, May 15, 2001, at 81 (statements of Senator Dillard).

It is evident from these comments that the legislature never intended to preclude the imposition of extended-term sentences for aggravated DUI offenses and has sought to clarify any ambiguity or misreading of section 11—501(d)(2).

■ Lastly, we note that defendant was convicted on all five counts in the indictment, including felony driving with a revoked or

suspended license pursuant to section 6—303 of the Vehicle Code. 625 ILCS 5/6—303 (West 2000). That section, like section 11—501(d)(1)(A), enhances the offense to a Class 4 felony, but unlike section 11—501(d)(2), does not specify a sentencing range. Thus, had the trial court chosen to sentence defendant for felony driving with a revoked or suspended license, there would be no question that he would be eligible for an extended-term sentence. We see no rational reason why the legislature would allow extended-term sentencing to apply to felony driving with a revoked or suspended license, but preclude its imposition for aggravated DUI.

For all of these reasons, we disagree with the limited decision by the Fifth District Appellate Court in *Mathews*. Rather, we hold that where there is no dispute that defendant was convicted of aggravated DUI, a Class 4 felony, and that he had previously been convicted of possession of a stolen motor vehicle, a Class 2 felony, within the last 10 years, he was eligible for an extended-term sentence of not less than three years and not more than six years. 730 ILCS 5/5—5—3.2(b)(1), 5—8—2 (West 2000). Thus, his five-year sentence was properly imposed by the trial court.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

HARTMAN and KARNEZIS, JJ., concur.