CHARLES E. THOMAS, PRESIDENT, *et al.*

*v.*

THE BOARD OF EDUCATION, COUNTY OF MCDOWELL, *et al.*

*v.*

WEST VIRGINIA BOARD OF EDUCATION, *etc.*

(No. CC920)

Decided July 29, 1981.

*Tutwiler, Crockett, LaCaria & Mursenky, Philip A. LaCaria,* for plaintiffs.

*Wade T. Watson,* Prosecuting Attorney, for McDowell Board of Education

*Chauncey H. Browning,* Attorney General, *Victor A. Barone,* Deputy Attorney General, for State Board of Education

McGRAW, JUSTICE:

This case is before the Court on certified questions from the Circuit Court of McDowell County pursuant to W.Va. Code § 58-5-2. In the questions presented we are asked to reexamine the doctrine of sovereign immunity as it relates to both the State Board of Education and county boards of education as they grow out of a dispute involving the misapplication of funds raised by a special county election, which funds were intended to supplement the wages of McDowell County non-teaching school employees. Because of the detailed nature of this case, it is necessary to summarize the key factual events which serve as the basis for this opinion.

At a special election held on December 4, 1973, the voters of McDowell County approved the adoption of a school levy to become effective on July 1, 1974, and continue until July 1, 1979. The purpose of the levy was to provide money to supplement the monthly wages of county school employees.[1] Each teacher, principal and supervisor in McDowell

---

[1] The relevant provisions of that levy are as follows:

A. To continue the supplement to the state basic salary of each teacher, principal and supervisor in McDowell County in the amount of one hundred five dollars ($105.00) per month plus the required social security payments, being an approximate amount of $735,000 per year, or an approximate total for five years of $3,675,000.

County was to receive an additional $105.00 per month, and each regularly employed full-time, non-teaching employee was to receive an additional $55.00 per month.

On July 1, 1974, in accordance with the requirements of the levy, the McDowell County Board of Education began paying the $55.00 per month plus the required social security payments to each eligible non-teaching employee. These payments continued until July 1, 1975, when the State Legislature passed and the governor signed a bill establishing a minimum pay scale for auxiliary and service employees of the county school system, similar to that already in effect for teachers.[2] Following the enactment of this bill, the McDowell County School Board ceased paying non-teaching employees the levy supplement over and above the state minimum salary and began applying the special levy funds to bring non-teaching employees' salaries up to the new state minimum amounts. The non-teaching school employees challenged this use of the levy funds, arguing that they were entitled to be paid the new state minimum salary *plus* the additional $55.00 per month. After exhausting their administrative remedies, the employees brought a declaratory judgment action in the Circuit Court of McDowell County, which denied relief.

On appeal, *Thomas v. Board of Education, County of McDowell*, 164 W.Va. 84, 261 S.E.2d 66 (1979), this Court noted in our syllabus:

1. The true interpretation of the language of a special levy proposal is the meaning given to it by the voters of the county, who, by their approval of the special levy, consent to be taxed more heavily to provide the necessary funds.

---

B. To continue the supplement to the salary or wages of each regularly employed full-time non-teaching employee in the amount of fifty-five dollars ($55.00) per month plus the required social security payments, being an approximate amount of $170,000 per year, or an approximate total for five years of $850,000.

[2] That bill was Senate Bill No. 121, which amended W.Va. code § 18A-4-8.

2. Funds derived from a special levy may be expended only for the purpose for which they are approved. W.Va. Code §§ 11-8-25, 11-8-26.

3. When the funds raised by a special levy election are intended to provide supplements to the state minimum salaries and wages of non-teaching school employees, such funds may be expended by the county board of education for that purpose only.

We reversed the judgment of the circuit court and remanded the case "for further proceedings in accordance with and consistent with this opinion." Counsel for the litigants should have then calculated mathematically the money to which the appellants were entitled and an order should have been entered requiring the payment of that sum certain. *Thomas* will not have been concluded until that has been done.

On March 25, 1980, the plaintiffs brought suit against the county board of education in the circuit court requesting $1,280,795.53, the amount of pay of which they had been deprived. The county board answered in this suit and filed a third-party complaint making the West Virginia Board of Education a third-party defendant. In that complaint, the county board alleged that the State Board of Education had directed them to apply the levy funds to the minimum wages and salaries provided for in Senate Bill No. 121, and therefore, the State Board was or might be liable to the McDowell County Board of Education for the entire amount of the plaintiffs' claim. Following the filing of the third-party complaint, both the county board and the State Board of Education filed motions for summary judgment seeking to have the suit dismissed on the ground of sovereign immunity.

The circuit court granted these motions for summary judgment and certified the following questions to this Court:

1. Does the Circuit Court of McDowell County, West Virginia, lack jurisdiction to hear this action against the State, inasmuch as the State is immune

from said suit, by virtue of West Virginia Constitution, Article VI, Section 35?

2. Does the Circuit Court of McDowell County, West Virginia, lack jurisdiction to hear the third-party complaint because Chapter 14, Article 2, Section 2 of the 1931 Code of West Virginia, as amended, provides that any suit in which a State agency is a party, shall be brought and prosecuted only in the Circuit Court of Kanawha County?

3. Does the third-party complaint fail to state a claim upon which relief can be granted against the third-party defendant?

4. Does the Circuit Court of McDowell County, West Virginia, lack jurisdiction to hear the plaintiffs' suit against The Board of Education of McDowell, et al., inasmuch as said Board of Education is also immune from said suit by virtue of Article VI, Section 35, of the West Virginia Constitution?

5. Does the plaintiffs' complaint against The Board of Education of the County of McDowell, et al., fail to state a complaint upon which relief can be granted?

In proceeding to address these questions, we begin by expressing our dismay that we are again to discuss the issue of the county school board's liability in this matter. One would think that we had sufficiently covered this issue in *Thomas v. Board of Education, County of McDowell, supra,* and indeed we find that our decision in that case is dispositive of certified question number five, and upon proper disposition, that is payment to the employees of their entitlement, would be res judicata.

While the county board of education sought to pose sophisticated arguments in *Thomas, supra,* the fact is that the board chose to treat two classes of employees differently without public authorization. The special levy which the voters of McDowell County approved, was intended to supplement for five years the monthly wages of all county school employees. In disregard of this public mandate, the county board ceased paying monthly

supplements to non-teaching employees following a Legislative increase in their minimum salaries, yet continued to pay teaching employees a monthly supplement over and above the salary fixed by statute even when their salaries were also increased by the Legislature. Therefore, that which was born of the same levy election mandate was applied differently to the two classes of employees involved. Such a difference in treatment was not permissible, and as we noted in *Thomas*, the county board had no discretion in the expenditure of the levy funds and thus was required to pay the monthly supplements to the non-teaching employees in accordance with the wishes of the people of McDowell County. Because the McDowell County Board of Education failed to meet the mandate of the levy election, the plaintiffs' amended complaint would state in the absence of proper resolution of *Thomas, supra,* a sufficient cause of action. Proper resolution of the issues in *Thomas* by the lower court would have provided that the school employees be paid the supplement to which they are entitled. Having answered question five in the negative, we turn to question four which presents us with the issue of sovereign immunity and its application to county school boards.

The concept of sovereign immunity has its roots in the old English monarchial system where the king, as sovereign possessed the personal privilege of immunity—"the king can do no wrong." Borchard, *Governmental Liability in Tort,* 34 Yale L.J. 1, 129, 229 (1924-25). In West Virginia the concept is derived from two sources—the constitutional and statutory incorporation of the common law into the law of West Virginia[3] and the constitutional provision granting

---

[3] The constitutional provision incorporating the common law into the law of West Virginia is article VIII, section 13, formerly article VIII, section 21, which provides:

Except as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature.

This provision of the Constitution is to be read *in pari materia* with W.Va. Code § 2-1-1 (1979 Replacement Vol.), which states:

immunity from suit to the State.[4] Note, *Torts–Governmental Immunity in West Virginia–Long Live the King?*, 76 W.Va. L. Rev. 543 (1973-74).

The West Virginia Constitutional provision which grants the State immunity from suit is article VI, section 35, which provides in part: "The State of West Virginia shall never be made defendant in any court of law or equity . . . ." While the language of this provision refers only to the State, this Court has interpreted the provision to include State agencies and subdivisions through which the State acts or which have a direct financial connection with the State. *See, e.g., City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969); *Shippa v. W.Va. Liquor Control Commission,* 132 W.Va. 51, 53 S.E.2d 609 (1948). With respect to county school boards in particular, we held in *Boggs v. Board of Education, Clay County,* 161 W.Va. 471, 244 S.E.2d 799 (1978), that county school boards are entitled to assert the sovereign immunity of the State under article VI, section 35.[5] The appellant argues compellingly that *Boggs* mistakes the law and that our conclusion in that case was

---

The common law of England, so far as it is not repugnant to the principles of the Constitution of this State, shall continue in force within the same, except in those respects wherein it was altered by the general assembly of Virginia before the twentieth day of June, eighteen hundred and sixty-three, or has been, or shall be, altered by the legislature of this State.

[4] The constitutional provision granting immunity from suit to the State is article VI, section 35, which provides:

The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

[5] Our decision in *Boggs,* reversed the prior holdings in this State that county boards of education were not entitled to the protection of article VI, section 35. *See, e.g., Krutili v. Board of Education,* 99 W.Va. 466, 129 S.E. 486 (1925); *Boice v. Board of Education,* 111 W.Va. 95, 160 S.E. 566 (1931); *Webster v. Board of Education,* 116 W.Va. 395, 180 S.E. 438 (1935). While we acknowledged the previous case law in this State on the subject of school board liability, we found that their reasoning offered more questions than answers in our attempt to determine what agencies would receive sovereign immunity.

incorrect. However, under the particular facts of this case, we are not required to address our holding in *Boggs*.

The constitutional immunity granted by article VI, section 35, has never been extended to bar all suits against the State. *Ables v. Mooney*, 164 W.Va. 19, 264 S.E.2d 424 (1979). Rather, suits are permitted against "[s]tate officers, who, under the color of the authority of unconstitutional state legislation, are guilty of personal trespasses and wrongs." Syllabus point 3, in part, *Blue Jacket Consolidated Copper Co. v. Scherr*, 50 W.Va. 533, 40 S.E. 514 (1901). The underlying reason for permitting such suits is that a state official who acts unlawfully or unconstitutionally, is acting beyond the scope of his office, and thus the suit is against him as an individual and not against the state. *See, e.g., Coal and Coke Railway Co. v. Conley*, 67 W.Va. 129, 67 S.E. 613 (1910). This same reasoning has been used by the United States Supreme Court in permitting suits against state officers. In *Ex parte Young*, 209 U.S. 123, 159, 28 S.Ct. 441, 454, 52 L.Ed. 714, 729 (1907), the Court observed:

> The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of the complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional.

The rationale of these decisions provides our answer to certified question number four. All public agencies are responsible for the proper application of publicly mandated funds. When a levy election is held to raise money for a specific public purpose, the money must be applied towards that purpose. W.Va. Code § 11-8-25. If the individual or agency charged with the expenditure of such funds fails to properly apply the money, legal action is in order to insure the proper application of the money. Therefore, we answer the fourth certified question in the negative, and find that under the particular facts of this case, the McDowell

County Board of Education is not entitled to assert the protection of sovereign immunity, and therefore, the Circuit Court of McDowell County does have jurisdiction to hear the plaintiffs' claim. Having addressed the questions relating to the county board of education, we now turn our attention to the certified questions relating to the State Board of Education.

Certified question number two, presents us with an issue of first impression in this State: whether W.Va. Code § 14-2-2 applies to third-party practice. That provision provides in part:

> (a) The following proceeding shall be brought and prosecuted only in the circuit court of Kanawha County:

> (1) Any suit in which the governor, any other state officer, or a state agency is made a party defendant, except as garnishee or suggestee.

If the State Board of Education were involved in this action as a principal party, there would be no doubt that W.Va. Code § 14-2-2 would prohibit the Circuit Court of McDowell County from hearing this action. However, the State Board's involvement in this case is as a third-party defense under Rule 14 (a) of the West Virginia Rules of Civil Procedure, which provides for third-party practice. Therefore, the ultimate issue is whether Rule 14 can serve to extend venue beyond the limitations of W.Va. Code § 14-2-2.

When the Legislature enacted § 14-2-2, the present West Virginia Rules of Civil Procedure were not in effect, and there was no third-party practice in this State. Lugar and Silverstein, *West Virginia Rules*, p. 125 (1960). In discussing Rule 14, Professor Lugar comments: "[t]here was no prior practice in this State which resembled third-party practice. However, it is procedural and changes no substantive rights of the parties." *Id.* Therefore, it would appear that the provisions of Code § 14-2-2 prevail over the West Virginia Rules of Civil Procedure, Rule 14. This conclusion is supported by Rule 82 which states: "These rules shall not be construed to extend or limit the jurisdiction of the courts

or the venue of actions therein." Therefore, we answer certified question number two in the affirmative, and find that the Circuit Court of McDowell County lacks jurisdiction of the third-party complaint against the State Board of Education. Actions wherein a state agency or official is named, whether as principal party or third-party defendant, may be brought only in the Circuit Court of Kanawha County.

In light of our disposition of question number two, it is not necessary for us to address questions one and three which deal with immunity and the sufficiency of the third-party complaint against the State Board. Resolution of those questions is left to a future date, when brought before the proper court.

In summary, we find that the Circuit Court of McDowell County does not have jurisdiction of the third-party complaint against the State Board of Education. It does, however, have jurisdiction over the employees' complaint against the county board of education. In light of our disposition of the questions relating to the county board of education, we hereby remand this case for further proceedings consistent with this opinion.

*Remanded.*