619 S.E.2d 246

**STATE ex rel. F. Douglas STUMP, Commissioner West Virginia Division of Motor Vehicles, Petitioner**

v.

**The Honorable Gary JOHNSON, in His Official Capacity as Judge of the Twenty–Eighth Judicial Circuit, and Basil H. Bishop, Respondents.**

No. 32651.

Supreme Court of Appeals of West Virginia.

Submitted June 8, 2005.

Decided July 7, 2005.

Dissenting Opinion of Justice Starcher July 13, 2005.

Janet E. James, Assistant Attorney General, Charleston, for Petitioner.

Kenneth J. Barnett, P.C., Summersville, for Respondent Basil H. Bishop.

BENJAMIN, Justice:

Petitioner, F. Douglas Stump, Commissioner, West Virginia Division of Motor Vehi-

cles ("Commissioner"), invokes the original jurisdiction of this Court to seek to prohibit the Honorable Gary Johnson, Judge of the Twenty–Eighth Judicial Circuit, and Basil H. Bishop ("Bishop"), from proceeding in a mandamus/prohibition action instituted by Bishop in the Circuit Court of Nicholas County, wherein the State of West Virginia and the Commissioner are named as respondents, and from enforcing an order of the circuit court entered on March 7, 2005, in that action (collectively referred to herein as "circuit court action"). The Commissioner contends that W. Va.Code § 53–1–2 (1933) and W. Va.Code § 14–2–2 (1976) make Kanawha County, not Nicholas County, the proper venue for Bishop's action in that (1) the Commissioner's records of Bishop's driver's license to which his circuit court action relates are in Kanawha County, and (2) the Commissioner, being a state officer, may only be sued in Kanawha County.

Bishop, on the other hand, contends (1) that the records to which his circuit court action relate are his arrest for driving under the influence of alcohol ("DUI"), the ensuing magistrate court proceedings, and a plea-bargain agreement he entered into with the Prosecuting Attorney of Nicholas County, and that all of these records are in Nicholas County; (2) that W. Va.Code § 14–2–2 (1976) applies only to "claims against the state"; (3) that the Commissioner "can *not* be characterized as a party defendant in [Bishop's circuit court action]"; and (4) that his circuit court action is ancillary to a criminal action over which the circuit court had exclusive jurisdiction and that W. Va.Code § 14–2–2 (1976) applies only to original proceedings against a state official.

The Court has before it the Commissioner's Verified Petition for Writ of Prohibition and accompanying Memorandum of Law in support thereof, Bishop's Response to the petition, and has heard oral argument of counsel for the Commissioner. Bishop did not appear for oral argument. Underlying the specific arguments made by the parties, we observe that the genesis for Bishop's position herein is the aforesaid plea-bargain agreement, the validity of which has not previously been considered. For the reasons stated below and in view of our rulings on the underlying matters which give rise to instant petition, the Court grants the writ of prohibition sought by the Commissioner.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The circuit court action arose out of an administrative revocation by the Commissioner of Bishop's driver's license for a period of six months, and a criminal prosecution in a magistrate court of Bishop, for driving under the influence of alcohol. The administrative revocation proceeded pursuant to the provisions of W. Va.Code § 17C–5A–1(a), (b), and (c) (2004), and the criminal prosecution proceeded pursuant to the provisions of the *Rules of Criminal Procedure for the Magistrate Courts of West Virginia.*

The Criminal Complaint signed by the arresting officer before a magistrate in Nicholas County represents that on or about September 4, 2004, "[Bishop] was involved in an accident on W. Va. Rt. 41 [in Nicholas County]. [Bishop] ran off the road left and into a ditch. Defendant was staggering all over the road [and] fell over an embankment. A strong smell of alcohol [word unclear] defendants breath. Failed nystagmus test. BAC. 108."

In response to the Statement of Arresting Officer filed with the Commissioner stating that the officer had reasonable grounds to believe that Bishop was driving a motor vehicle while under the influence of alcohol, the Commissioner revoked Bishop's privilege to operate a vehicle in this State for a period of six months from October 22, 2004. Thereafter, the Commissioner, in response to a timely request by Bishop, stayed the imposition of the six-month period of revocation, and afforded him an opportunity to be heard. The Commissioner scheduled an administrative hearing for Bishop on November 16, 2004. Some three weeks before this scheduled hearing, Bishop's attorney, in a letter dated October 21, 2004, to the Division of Motor Vehicles, advised "that we are currently in negotiations with the Nicholas County Prosecuting Attorney's Office re-

garding a potential plea which may obviate the need to subpoena the arresting officer or the individual or individuals administering the testing or performing the chemical analysis." [1]

. At the administrative hearing on November 16, 2004, counsel for Bishop advised the hearing examiner of the agreement to a plea bargain in the criminal prosecution. According to Bishop, a part of that agreement was that the arresting officer would not present any evidence at the administrative hearing. In fact, the arresting officer did not present any evidence.

A little more than two months later, the Director of Legal Services of the Division of Motor Vehicles wrote a letter, dated January 28, 2005, to Bishop advising that "[t]he agreement [apparently referring to the claimed plea bargain agreement] proposed at the previous hearing was not accepted." The letter notified Bishop that "[a] hearing regarding the suspension of your driver's license has been rescheduled for March 09, 2005, at 10:00 AM, at the Division of Motor Vehicles, 295 Skidmore Lane, Sutton, WV." As a result of Bishop's subsequent circuit court action below, an order was entered on March 7, 2005, staying the rescheduled hearing set for March 9, 2005, pending further proceedings in that action. On March 24, 2005, the Commissioner filed the instant petition with this Court.

In his response to the Commissioner's Petition for a Writ of Prohibition, Bishop represents that "[a]t that time [presumably November, 22, 2004] your Petitioner, the State of West Virginia, by an assistant prosecuting attorney, offered Mr. Bishop a plea bargain, whereby Mr. Bishop would plead guilty to the charge of DUI, first offense. In return, the arresting officer would not present evidence at the DMV revocation hearing. The arresting officer, Henry A. Spinks, concurred

with the plea offer. Mr. Bishop accepted the plea offer and then entered into a valid and binding plea bargain agreement with your Petitioner, State of West Virginia." [2] Later in that same response, Bishop admits that "[o]n November 22, 2004, [he] entered a plea to the underlying charge of DUIA, first offense, in Nicholas County Magistrate Court." A conviction followed, and Bishop was sentenced to a day in jail, a fine and costs. Notwithstanding the representation of Bishop's counsel that a part of the plea agreement was that Bishop "would plead guilty to the charge of DUIA, first offense," the record before us shows that Bishop "plead ... no contest."

The circuit court action .below which is at the heart of the issue before us sought to stop the administrative license revocation hearing. It was filed by Bishop on or about February 24, 2005, and consisted of (1) a Petition for a Writ of Mandamus filed with the Circuit Court of Nicholas County seeking (a) to compel the State to abide by the terms of the claimed plea-bargain agreement between it, as represented by the Nicholas County Prosecuting Attorney, and Bishop in Bishop's criminal prosecution (whereby Bishop claimed that the State agreed that the law-enforcement officer who arrested Bishop for DUI would not testify in the administrative license revocation hearing), and (b) to order the Commissioner to enter an order based only upon the November 16, 2004, administrative hearing (at which hearing the arresting officer refused to provide evidence of the arrest) without any further proceedings or hearing; and (2) for a Writ of Prohibition to (a) prohibit the Commissioner from proceeding with the rescheduled hearing set for March 9, 2005, and to (b) prohibit the Commissioner enforcing the earlier revocation of Bishop's driver's license until a court

<hr />

**1.** In that same letter, Bishop's attorney put the Division of Motor Vehicles on notice the he "intend[ed] to challenge the results of secondary chemical testing of the blood, breath or urine and [he intended] to cross-examine the individual or individuals who administered the test or performed the chemical analysis."

**2.** While there are a number of exhibits attached to the copy of Bishop's petition in the circuit

court action (filed with this Court by the Commissioner in his petition) the purported plea agreement was not one of them. In his petition before us, the Commissioner represents that "[t]he plea agreement reached in the Magistrate Court of Nicholas County is appended to Petitioner's Petition (See Exhibit 2) and contains no mention of the administrative hearing or the arresting officer's testimony therein."

determination could be made and all appeals exhausted. As set forth above, the circuit court entered an order on March 7, 2005, staying the Commissioner's rescheduled hearing set for March 9, 2005.

The Commissioner now asks this Court to issue a writ prohibiting the circuit court and Bishop from proceeding with the circuit court action and prohibiting the circuit court from enforcing the March 7, 2005, order on the ground that Kanawha County, rather than Nicholas County, is the proper venue for that action.

## II.

### STANDARD OF REVIEW

█ " 'The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction.' *Syl. State ex rel. Vineyard v. O'Brien,* 100 W.Va. 163, 130 S.E. 111 (1925)." Syl. Pt. 1, *State ex rel. Brison v. Kaufman,* 213 W.Va. 624, 584 S.E.2d 480 (2003). In Syllabus Point 4 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower

tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With this standard in mind, we address the Commissioner's petition.

## III.

### DISCUSSION

The pending petition presents for our consideration the issue of whether Nicholas or Kanawha County is the proper venue for Bishop's circuit court action which sought writs of mandamus and prohibition against the Commissioner. Also necessary to our consideration of the pending petition is the validity of the purported plea agreement which is the underlying basis for the writs sought by Bishop below.

A. Circuit Court Jurisdiction and Venue

We turn initially to the determination of whether, in Bishop's circuit court action, the requested writs relate to a "record or proceeding" in Nicholas County or in Kanawha County (*i.e.,* at the State Capitol). Three venue scenarios may be considered. First, if the "record or proceeding" to which the requested writs relate is in Kanawha County, the Circuit Court of Kanawha County, not Nicholas County, is the proper venue for Bishop's circuit court action. W. Va.Code § 53–1–2 (1933) [3]. Second, if the "record or proceeding" to which the requested writs relate is in Nicholas County *and* if Bishop's circuit court action is *not* a "suit in which [a] state officer, or a state agency is . . . a party defendant," the Circuit Court of Nicholas County is the proper venue.[4] Third, if the

---

**3.** W. Va.Code § 53–1–2 (1933), in relevant part, states:

Jurisdiction of writs of mandamus and prohibition (except cases whereof cognizance has been taken by the supreme court of appeals or a judge thereof in vacation), shall be in the circuit court of the county *in which the record*

*or proceeding is to which the writ relates.* (Emphasis added.)

**4.** W. Va.Code § 14–2–2 (1976), in relevant part, provides:

(a) The following proceedings shall be brought and prosecuted only in the circuit court of Kanawha County:

"record or proceeding" is in Nicholas County, *and* if Bishop's circuit court action *is* a "suit in which [a] state officer, or a state agency is ... a party defendant," the proper venue for Bishop's circuit court action will require us to determine which Code provision, W. Va.Code §§ 53–1–2 (1933) or 14–2–2(a) (1976), is the controlling one.

We turn initially to the determination of whether, in Bishop's circuit court action, the "record or proceeding" to which the writs sought relates is in Nicholas County or in Kanawha County. The Commissioner contends that the writs which Bishop sought in his circuit court action relate to his driver's license and the records for such licenses are maintained at the State Capitol in Charleston. The Commissioner relies upon this Court's decision in *State ex rel. Miller v. Reed,* 203 W.Va. 673, 510 S.E.2d 507 (1998) in support of his position. We agree.

*Reed* involved two cases consolidated for purposes of an opinion. The issue raised in each case involved the Commissioner's obligation to mail initial orders revoking drivers' licenses for driving under the influence of alcohol. One driver was named Shedd, the other Burrough. While the Shedd case and the *Burrough* case followed different procedural routes, the first in the Circuit Court of Preston County, the second in the Circuit Court of Hancock County, they presented an identical issue: Was the Commissioner of the Division of Motor Vehicles obligated to mail copies of the Commissioner's initial order revoking their drivers' licenses for driving under the influence of alcohol to the addresses they gave to the arresting officers or to their addresses as shown by the Division's records pursuant to the provisions of W. Va.Code § 17C–2–19 (1951): Neither Shedd nor Burrough had notified the Division in writing of their address changes as required by W. Va.Code § 17B–2–13 (1992). Shedd and Burrough contended that since the initial orders of revocation were not sent to the addresses they provided to the arresting officers, they did not receive the orders and were, therefore, given no proper opportunity to challenge the revocations in contested

hearings. Shedd and Burrough invoked the jurisdiction of the Circuit Court of Preston County and the Circuit Court of Hancock County, respectively, to have those courts compel the Commissioner to grant them administrative hearings to challenge the initial revocation of their drivers' licenses. The circuit courts ordered the Commissioner to grant Shedd and Burrough the hearings they sought.

The Commissioner filed for a writ of prohibition with this Court to prevent enforcement of the order of the Circuit Court of Preston County and appealed the order of the Circuit Court of Hancock County. We granted the writ and reversed the order, holding in Syllabus Point 8 that the Division of Motor Vehicles satisfied "the requirements of due process by mailing a copy of a driver's license revocation or suspension order to an individual whose license to drive is revoked or suspended, addressed to such individual at the last recorded address shown by the Division's records." *Id.*

In *Reed,* the Commissioner contended that because neither Shedd nor Burrough was properly before the Circuit Courts of Preston and Hancock Counties, respectively, as administrative appeals, neither circuit court had jurisdiction or venue on the address issue pursuant to W. Va.Code § 53–1–2. We agreed stating "both actions were more in the nature of a petition for a writ of mandamus rather than a petition for appeal from a final order in an administrative hearing." *Reed,* 203 W.Va. at 684, 510 S.E.2d at 518. We continued:

> West Virginia Code § 53–1–2 (1994) provides that "[j]urisdiction of writs of mandamus and prohibition ... shall be in the circuit court of the county in which the record or proceeding is to which the writ relates." In both cases, the Division's records relating to drivers' licenses are maintained at the State Capitol in Charleston, Kanawha County, West Virginia. There is no question that, in regard to these two cases, jurisdiction for a writ of mandamus must be brought in the Circuit Court of Kanawha County. Both actions sought to compel the Division to provide Mr. Shedd

(1) Any suit in which the governor, or any state officer, or a state agency is made a party defendant, except as garnishee or suggestee.

and Ms. Burrough with an administrative hearing to challenge the revocation of their driver's licenses, and such records are maintained in Kanawha County.

Further, because we have determined that neither Mr. Shedd's nor Ms. Burrough's actions arose under the APA, the question of venue is not controlled by the statutory provisions found in the APA, but, rather, by the provisions of West Virginia Code § 14–2–2 (1995). West Virginia Code § 14–2–2(a)(1) specifically provides that "[a]ny suit in which the governor, any other state officer, or a state agency is made a party defendant" shall be brought and prosecuted in the Circuit Court of Kanawha County. We recognized in syllabus point five of *State ex rel. West Virginia Board of Education v. Perry*, 189 W.Va. 662, 434 S.E.2d 22 (1993) that " '[a]ctions wherein a state agency or official is named, whether as principal party or third-party defendant, may be brought only in the Circuit Court of Kanawha County.' Syllabus Point 2, *Thomas v. Board of Education, County of McDowell*, 167 W.Va. 911, 280 S.E.2d 816 (1981)." Accordingly, we hold that when an individual brings a mandamus action seeking to compel the West Virginia Division of Motor Vehicles to perform a statutory duty which relates to the Division's maintenance of records, and such action is not an administrative appeal pursuant to the West Virginia Administrative Procedures Act, West Virginia Code §§ 29A–1–1 to 29A–7–4 (1998), West Virginia Code §§ 14–2–2(a)(1) and 53–1–2 require that such action be brought in the Circuit Court of Kanawha County, but such an action cannot be used to circumvent the administrative appeals procedure. *Id.*

Bishop undertakes to distinguish the *Reed* decision by stating that he "is not seeking [in his circuit court action] to compel the DMV to perform a statutory duty which relates to the Division's maintenance of records. Rather, he is seeking to enforce the terms of his plea bargain agreement with the State of West Virginia and to order the DMV to enter a decision pursuant to the administrative hearing held in Braxton County on November 16, 2004, without further hearing or proceeding." [5]

■ We cannot avoid the conclusion that Bishop's circuit court action is, in its essence, all about Bishop's driver's license. He wants his license restored. He wants the Commissioner's order of revocation rescinded. That, too, was the objective of Shedd and of Burrough in their respective circuit court actions. As in the *Reed* decision of this Court, the Commissioner's or Division's records relating to drivers' licenses, including the driver's license of Bishop, are maintained at the State Capitol in Charleston, Kanawha County. Accordingly, since the "record" (the driver's license of Bishop) to which his mandamus/prohibition circuit court action "relates" is in Kanawha County, we find that the Circuit Court of Nicholas County lacked jurisdiction to proceed with Bishop's circuit court action under the provisions of W. Va.Code § 53–1–2(1933).

Even if we found otherwise on the issue of the location of the relevant record herein, W. Va.Code § 14–2–2(a)(1) (1976) requires the same result (suits in which any state officer or agency is a party defendant shall to be brought and prosecuted in the Circuit Court of Kanawha County). Because the Commissioner is a state officer and the Division of Motor Vehicles is a state agency, the Commissioner argues that W. Va.Code § 14–2–

---

**5.** As Bishop has indicated, in the mandamus phase of his circuit court action, he is seeking to have the circuit court "to order the DMV to enter a decision pursuant to the administrative hearing held in Braxton County on November 16, 2004." The fact is that no evidence was presented to the hearing examiner at the hearing on November 16, 2004, that Bishop drove a motor vehicle while under the influence of alcohol because the arresting officer refused to present any evidence, apparently because it was agreed between Bishop and the prosecuting attorney as a part of the claimed plea-bargain agreement that the arresting officer would not present evidence at that hearing. Since the arresting officer refused to offer any evidence at the November 16, 2004, revocation hearing, there was no evidence presented at that hearing that Bishop drove a motor vehicle while under the influence of alcohol. Accordingly, it is clear that Bishop is asking the circuit court to compel the Commissioner to rescind his earlier order of revocation of Bishop's driver's license as required by W. Va.Code § 17C–5A–2(q) (2004).

2(a)(1) deprives the Circuit Court of Nicholas County of venue in Bishop's Circuit Action. The Commissioner quotes Syllabus Point 11 of the *Reed* opinion, which states: "'Actions wherein a state agency or official is named, whether as principal party or third party defendant, may be brought only in the Circuit Court of Kanawha County.' Syl. Pt. 2, *Thomas v. Board of Education, County of McDowell,* 167 W.Va. 911, 280 S.E.2d 816 (1981). Syl. Pt. 5, *State ex rel. West Virginia Board of Education v. Perry,* 189 W.Va. 662, 434 S.E.2d 22 (1993)."

There appears to be no dispute between the parties that the Commissioner is a state officer and that the Division which he heads is a state agency. Certainly, they meet the test we established in Syllabus Point 1 of *Blower v. W. Va. Educ. Broadcasting Auth.,* 182 W.Va. 528, 389 S.E.2d 739 (1990):

> In determining whether a particular organization is a state agency, we will examine its legislative framework. In particular, we look to see if its powers are substantially created by the legislature and whether its governing board's composition is prescribed by the legislature. Other significant factors are whether the organization can operate on a statewide basis, whether it is financially dependent on public funds, and whether it is required to deposit its funds in the state treasury.

*See also State ex rel. W. Va. Bd. of Educ. v. Perry,* 189 W.Va. 662, 434 S.E.2d 22, fn. 1 (1993).

Bishop's circuit court action is likewise a "suit." In *Reed,* we described the nature of the relief requested by both parties at the circuit court level as being "in the nature of a petition for a writ of mandamus" and held that W. Va.Code § 14–2–2(a)(1) required such actions to have been brought in the Circuit Court of Kanawha County. This result followed existing precedent of this Court. In *Newman v. Bailey,* 124 W.Va. 705, 22 S.E.2d 280 (1942), it was contended that mandamus, being an extraordinary remedy, was not within the purview of then W. Va. Code § 14–2–3 (1941). The Court rejected the contention stating:

Originally, mandamus was an extraordinary prerogative writ. Subject to some qualifications a mandamus in modern practice is now considered an action at law between the parties. *Fisher v. City of Charleston,* 17 W.Va. 595; *State ex rel. Matheny v. County Court,* 47 W.Va. 672, 35 S.E. 959. While the use of the word 'suit' in Code 14–2–3, may be inept, we think that, considering the section as a whole, the statute applies to actions at law, as well as suits in equity, and that venue of this proceeding [a petition for a writ of mandamus filed in the Circuit Court of Wetzel County] is in Kanawha County. *Newman,* 124 W.Va. at 708, 22 S.E.2d at 282; *accord, Taylor v. Baltimore & O.R. Co.,* 138 W.Va. 313, 75 S.E.2d 858 (1953); *see also State ex rel. Ritchie v. Triplett,* 160 W.Va. 599, 236 S.E.2d 474 (1977).

Bishop counters that the Commissioner "can *not* be characterized as a party defendant [to Bishop's circuit court action]." We disagree. The Commissioner is a named respondent to that action. In his action, Bishop seeks to have the Circuit Court of Nicholas County "order Respondent Division of Motor Vehicles (DMV) to enter a decision pursuant to administrative hearing held on November 16, 2004." It strains reason to contend that the Commissioner is anything but a defendant for purposes of W. Va.Code § 14–2–2(a)(1). The statutory language of W. Va.Code § 14–2–2 controverts Bishop's restrictive venue argument. Mandamus actions which may be brought under W. Va. Code § 14–2–2 in a circuit court other than that of Kanawha County are expressly limited to actions seeking ". . . relief involving the taking, title, or collection for or prevention of damage to real property . . ." wherein the circuit court of the county in which the property is located may also be a proper venue. W. Va.Code § 14–2–2(b) (1976). See *State ex rel. Ritchie v. Triplett,* 160 W.Va. 599, 236 S.E.2d 474 (1977) (only proper venue for an action for mandamus seeking to compel maintenance of a state road is the Circuit Court of Kanawha County).

Accordingly, since the "record," to which Bishop's mandamus/prohibition circuit court action "relates," his driver's license, is in

Kanawha County, and because the Commissioner was effectively a "defendant" below in Bishop's mandamus/prohibition circuit court action, we find that the Circuit Court of Nicholas County lacked the jurisdiction to proceed with Bishop's mandamus/prohibition circuit court actions and that the proper jurisdiction and venue for the action was the Circuit Court of Kanawha County. W. Va. Code § 53–1–2 (1933); W. Va.Code § 14–2–2(a)(1) (1976).

### B. Administrative Revocation Jurisdiction of the Commissioner

"This Court has previously recognized that administrative license revocation proceedings and criminal DUI proceedings are two separate and distinct proceedings. In the recent case of *Mullen v. Division of Motor Vehicles*, 216 W.Va. 731, 613 S.E.2d 98, 101 (2005), this Court, through Justice Starcher, observed that we have:

> ... clearly recognized that the two 'tracks' of criminal and civil drivers' license-related proceedings that arise out of an incident where a person is accused of DUI are separate ... If the Legislature had wanted to so intertwine the criminal and civil aspects of DUI law as to automatically void related administrative driver's license suspensions when DUI criminal charges are dropped or unproven, the Legislature could have clearly done so—but it did not.

*Id.*" *Carroll v. Stump*, 217 W. Va. 748, 619 S.E.2d 261 (2005). In *Carroll*, we observed that "[a]lthough the Commissioner is to give consideration to the results of related criminal proceedings, the criminal proceedings are not dispositive of the administrative license revocation proceedings and are not a jurisdictional prerequisite to the administrative proceedings." *Id.*

Bishop, however, also argues that his circuit court action is "ancillary to a criminal action over which the Circuit Court of Nicholas County has exclusive jurisdiction" and that, accordingly, W. Va.Code § 14–2–2 (1976) has no application. He relies upon *State ex rel. Dodrill v. Scott*, 177 W.Va. 452, 352 S.E.2d 741 (W.Va.1986), wherein the Commissioner, Department of Corrections, the warden and associate warden of the Huttonsville Correctional Center sought a writ of

prohibition from this Court to prohibit the Circuit Court of Jackson County from finding the petitioners in contempt of court for complying with an executive order of the Governor in refusing to admit inmates to the Correctional Center. In *Dodrill*, four convicted felons had been ordered by the Circuit Court of Jackson County to be remanded to the custody of the Commissioner of Corrections for confinement in the penitentiary of this state. However, based upon the authority of the executive order, neither the Huttonsville Correctional Center nor the Department of Corrections would accept custody of the four inmates despite the commitment orders of the Circuit Court of Jackson County. The petitioners in seeking a writ of prohibition from this Court contended that under W. Va.Code § 14–2–2(1976), the proper venue for the contempt proceedings against them was the Circuit Court of Kanawha County and not the Circuit Court of Jackson County. The *Dodrill* Court disagreed, stating:

> The [contempt] proceedings were ancillary to a criminal action over which the Circuit Court of Jackson County had jurisdiction and for which that court was the proper venue. W. Va.Code 61–5–26 [1923] provides the circuit court with the power to hold in contempt any person disobeying a lawful order issued in a case in which the court has jurisdiction and venue is proper. Because we believe that W. Va.Code 14–2–2 [1976] applies only to original proceedings against a state official, we hold that it does not mitigate the authority granted to the circuit courts by W. Va.Code 61–5–26 [1923].

*Dodrill*, 177 W.Va. at 459–60, 352 S.E.2d at 748.

The *Dodrill* decision is not relevant to Bishop's circuit court action. Bishop's actions were in the form of original proceedings against the Commissioner, a state official, not a contempt proceeding in an existing case before the circuit court as in *Dodrill*. Moreover, Bishop's "ancillary to a criminal action" argument ignores the specific language of W. Va.Code § 17C–5A–la which clearly anticipates an action by the Commissioner, separate and distinct from any criminal proceeding, for the administrative revo-

cation of drivers' licenses upon convictions for driving under the influence of alcohol, controlled substances or drugs.

■ It is undisputed from the record that Bishop was convicted of DUI after apparently entering a "no contest" plea. By inclusion of the operative word, "shall," W. Va.Code § 17C–5A–1a(a) imposes on the Commissioner the mandatory, non-delegable duty to revoke or suspend an individual's license to operate a motor vehicle in West Virginia if the person is "convicted" of driving under the influence of alcohol, controlled substances or drugs, as set forth in W. Va.Code § 17C–5–2 (2001), or for an offense described in a municipal ordinance which has the same such elements.[6] We discussed the mandatory connotation of the term "shall" as used in W. Va.Code § 17C–5A–2 in *Johnson v. Commissioner, Dept. of Motor Vehicles*, 178 W.Va. 675, 677, 363 S.E.2d 752, 754 (1987). Therein, we quoted Syllabus Point 1, of *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982) and stated "[i]t is well established that the word 'shall' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."

■ In this case, Bishop admits being convicted of DUI. The only question raised by the record is whether Bishop pled "guilty" (as specified in the purported plea agreement) or "no contest" (as set forth by Bishop) to the DUI charge. W. Va.Code § 17C–5A–1a(e)(1994) provides, "For the purposes of this section, a person is convicted when the person enters a plea of guilty *or is found guilty by a court* or jury." (Emphasis added) This Code provision neither limits nor otherwise qualifies the manner in which the criminal conviction occurred before the Commissioner's duty to revoke a driver's license is triggered. Bishop's argument that the Commissioner's revocation duties are somehow ancillary to the criminal proceeding held in Nicholas County necessarily fails. "Ad-

ministrative actions and criminal sanctions are independent lines of inquiry which must not be confused or integrated." *Wagoner v. Sidropolis*, 184 W.Va. 40, 43, 399 S.E.2d 183, 186 (1990) (per curiam). Criminal proceedings are not necessary predicates to the maintenance of administrative proceedings for the purpose of driver's license revocations under the provisions of W. Va.Code § 17C–5A–1 for driving a motor vehicle while under the influence of alcohol. Neither are they restraints on such proceedings.

Bishop was found guilty based on his plea. In giving effect to the plain language contained within W. Va.Code § 17C–5A–1a(e), we find that a person pleading guilty or found guilty by a court or jury of driving under the influence of alcohol, controlled substances, or drugs, shall be considered "convicted," and that the Commissioner has a mandatory duty to revoke the person's license to operate a motor vehicle in the State of West Virginia as provided by W. Va.Code § 17C–5A–1a(a). To ensure that the Commissioner may accomplish his or her duties, we observe that W. Va.Code § 17C–5–1(b) establishes mandatory time frames for circuit clerks, magistrate clerks and municipal court clerks to promptly notify the Commissioner of all criminal convictions for driving under the influence of alcohol, controlled substances or drugs regardless of the plea entered and regardless of whether guilt was determined by a court or a jury.

C. Validity of Plea Bargain Agreement

■ Our consideration of this matter does not end with our holding on the jurisdictional and venue aspects raised. The purpose of the administrative hearing, until stayed by the Circuit Court of Nicholas County, was to have been to determine whether the Commissioner should affirm or rescind his earlier order of revocation of Bishop's driver's license for DUI. Primary to any consideration of Bishop's circuit court action is West Virginia's public policy, as codified, regarding DUI and the safety of West Virginia's streets

---

**6.** W. Va.Code § 17C–5A–1a(a) provides in pertinent part:

 If a person is convicted for an offense [of driving under the influence] ..., and if the person does not act to appeal the conviction

within the time periods described in subsection (b) of this section, the person's license to operate a motor vehicle *shall* be revoked or suspended[.] (Emphasis added.)

and highways. Central to this inquiry is whether the Prosecuting Attorney of Nicholas County had the authority in the criminal prosecution of Bishop for DUI to enter into a plea-bargain agreement with Bishop that required the officer who arrested Bishop for that offense, not to present evidence of the arrest in a separate administrative hearing conducted by the Commissioner pursuant to W. Va.Code § 17C–5A–2 (2000). This Court has repeatedly recognized that the administrative driver's license revocation procedures of the Commissioner are meant· to protect the public from persons who drive under the influence of alcohol.[7]

 "A criminal defendant has no constitutional right to be offered the opportunity to plea bargain." 21 Am.Jur.2d, Criminal Law, § 686, p. 676 (1998). "Plea bargaining is not a right of a defendant, or the prosecution. It is an accommodation which the judiciary system is free to institute or reject." *State v. Brimage,* 271 N.J.Super. 369, 379, 638 A.2d 904 (App.Div.1994). Accord, *State v. Hessen,* 145 N.J. 441, 678 A.2d 1082 (N.J. 1996). 21 Am.Jur.2d, Criminal Law, § 688, p. 678 (1998) cites the *Hessen* case for the proposition that "Statutes or rules sometimes exclude particular offenses, such as drunk driving, from plea bargaining." In view of the important policy considerations regarding administrative license revocations in DUI cases, we hold that neither a prosecuting attorney, law enforcement officer nor any

other person has the authority to enter into an agreement that would prevent the Commissioner of the West Virginia Department of Motor Vehicles from carrying out his or her legislative responsibilities or to prevent or impede a law enforcement officer from presenting evidence of the arrest in the Commissioner's license revocation administrative hearing.

## IV.

## CONCLUSION

For the reasons stated above, we grant the writ of prohibition as requested by the Commissioner and direct the Circuit Court of Nicholas County to rescind the court's order entered on March 7, 2005, and dismiss Bishop's Petition for Writ of Mandamus and Writ of Prohibition for lack of jurisdiction and venue of such petition in the Circuit Court of Nicholas County.

Writ Granted.

Justice MAYNARD concurs.

Justice STARCHER, dissents and files a separate opinion joined by Chief Justice ALBRIGHT.

STARCHER, J., dissenting.

(Filed July 13, 2005)

I have serious reservations about Syllabus Point 3. I would set the case for reargument

---

7. See *Jordan v. Roberts,* 161 W.Va. 750, 758, 246 S.E.2d 259, 264 (1978) (noting "[i]n *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the Court emphasized 'the important public interest in safety on the roads and highways, and in prompt removal of a safety hazard' in sustaining an Illinois statute authorizing revocation of a driver's license for repeated traffic violations."); *Stalnaker v. Roberts,* 168 W.Va. 593, 599, 287 S.E.2d 166, 169 (1981) (finding "[t]he intent of the West Virginia traffic laws which provide that the commissioner of motor vehicles revoke the licenses of dangerous drivers is protection for the innocent public"); *State ex rel. Ruddlesden v. Roberts,* 175 W.Va. 161, 164, 332 S.E.2d 122, 126 (1985) (recognizing "[t]he drunk driving laws of this State are hardly remedial in nature. They are regulatory and protective, designed to remove violat[or]s from the public highways as quickly as possible."); *Shell v. Bechtold,* 175 W.Va. 792, 796, 338 S.E.2d 393, 396 (1985) (stating "[t]he purpose of the administrative sanction of license revocation is the re-

moval of persons who drive under the influence of alcohol and other intoxicants from our highways ... The revocation provisions are not penal in nature ... and should be read in accord with the general intent of our traffic laws to protect the innocent public.") (internal citations omitted); *Johnson v. Commissioner,* 178 W.Va. 675, 677, 363 S.E.2d 752, 754 (1987) ("The administrative sanctions of license revocation is intended to protect the public from persons who drive under the influence of alcohol"); and *State ex rel. Hall v. Schlaegel,* 202 W.Va. 93, 97, 502 S.E.2d 190, 194 (1998) ("The purpose of the administrative sanction of license revocation, as we stated in *Shell v. Bechtold,* 175 W.Va. 792, 338 S.E.2d 393 (1985), 'is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways.' *Id.* at 796, 338 S.E.2d at 396. This objective of removing substance-affected drivers from our roads in the interest of promoting safety and saving lives is consistent 'with the general intent of our traffic laws to protect the innocent public' ").

and ask the West Virginia Prosecuting Attorneys Institute and other *amici* to submit briefs on the issue raised by Syllabus Point 3.

The issue addressed by Syllabus Point 3 was not raised, briefed, or argued by the parties in the instant case. Syllabus Point 3 is not supported by any West Virginia case law on plea bargains—or on any other topic. Syllabus Point 3 is not necessary to the resolution of the instant case. In that sense, Syllabus Point 3 is merely gratuitous (and unwise) *dicta.*

Moreover, Syllabus Point 3 will have an unknown but very possibly large effect on the day-to-day operation and administration of the criminal justice system in every county.

Syllabus Point 3 would impose a broad, mandatory—yet vague and undefined—duty on police, prosecutors, and an undefined universe of "other persons" to affirmatively consider and not even accidentally impair the licensing practices of the DMV, in situations where there is no communication with or involvement by the DMV.

Syllabus Point 3 is probably contrary to the principle of prosecutorial discretion. Syllabus Point 3 is disrespectful of our police officers with respect to discretion expected of them in the exercise of their duties. Syllabus Point 3 *might make* useful plea bargains in weak DUI cases much rarer. Before this Court considers making such a novel rule that could have such large consequences, fairness requires that the affected parties have their say. It's simply unfair to prosecutors and police to put these handcuffs on them, without their even having had a chance for input.

I also have serious reservations about the majority opinion's high-handedness in requiring West Virginians who wish to challenge the propriety of a DMV action in connection with a license suspension hearing to file their case in Charleston.

The DMV has license hearings in peoples' *home counties* because that is fair—and is required by the Legislature. The circuit court in a person's *home county* hears the appeal of a DMV decision because that is fair—and is required by the Legislature.

And, the DMV now has regional offices scattered throughout the State.

From these examples, I have no trouble seeing that the Legislature's intent is NOT that a person in Martinsburg who is challenging a DMV licensing action should have to hire a lawyer hundreds of miles away in Charleston, and go to court hundreds of miles away in Charleston.

Rather, the circuit court where the DMV proceeding is to be held—a citizen's *home county*—should hear cases involving that hearing.

Is that so hard to figure out?

On this point, the majority opinion is embarrassingly out of touch with the reality of West Virginia's geographically diverse population—and with the wishes of the Legislature.

It would behoove the Legislature to consider making its intent clear on this issue.

Accordingly, I dissent, and I am authorized to state that Chief Justice Albright joins me in this separate opinion.