THIRD DIVISION
February 13, 2008

No. 1-06-0868

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 05 CR 1363101 |
| | ) | |
| WLODZIMIERZ CIECHANOWSKI, | ) | Honorable |
| | ) | Thomas Fecarotta, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant, Wlodzimierz Ciechanowski, was found guilty of aggravated driving while under the influence of alcohol (DUI) based on driving under the influence during a period in which his driving privileges had been suspended for refusing to submit to a sobriety test after a prior arrest for suspected DUI (625 ILCS 5/11-501(c-1)(1) (West 2004)).  Defendant was subsequently sentenced to 10 days of imprisonment in the Cook County Department of Corrections and 30 months of probation, and was ordered to pay a total of $2,950 in fines and costs.  On appeal, defendant contends that: (1) he could not have been convicted of aggravated DUI as a matter of law because the suspension for the prior DUI arrest was rescinded, which rendered that suspension void *ab initio*; and (2) the State failed to prove him guilty of

aggravated DUI beyond a reasonable doubt. For the following reasons, we affirm.

Defendant was charged with aggravated DUI following a May 9, 2005, accident that occurred in the 4800 block of Nagle Avenue in Harwood Heights, Illinois.[1] At that time, defendant's driving privileges were suspended as a result of his failure to submit to sobriety tests during a previous DUI arrest on March 3, 2005.

However, on June 20, 2005, the court granted a petition filed by defendant to rescind the suspension resulting from the March 3 arrest. Specifically, the court found that the arresting officer had failed to give defendant the proper warnings before defendant refused to submit to sobriety testing.

Subsequently, defendant filed a motion to dismiss the aggravated DUI indictment which is the subject of the present case. In that motion, he claimed that the rescission of his first suspension due to the officer's failure to properly warn him rendered that suspension void *ab initio*. Therefore, he maintained, he could not be charged with aggravated DUI for driving under the influence while his driving privileges were suspended. The court denied this motion.

The following evidence was then adduced at defendant's trial. Carlos Moya testified that shortly before 5 p.m. on the date in question, he was driving on Nagle Avenue toward Foster Avenue when he observed defendant driving very fast. Defendant then struck a silver car and kept going. Moya slowed to see if the driver of the silver car was alright, and after observing that

---

[1] Defendant was also given traffic citations for: driving while his license was suspended or revoked (625 ILCS 5/6-303 (West 2004)); leaving the scene of an accident with vehicle damage (625 ILCS 5/11-402 (West 2004)); driving too fast for conditions (625 ILCS 5/11-601(a) (West 2004)); and illegal lane usage (625 ILCS 5/11-709(a) (West 2004)). However, the record does not indicate what became of these citations.

he was, Moya followed defendant in order to get his license plate number. As Moya was doing so, he observed defendant strike two more vehicles while traveling at a speed of 40 to 45 miles per hour.

One of these vehicles was a white Cadillac driven by off-duty Chicago police officer Raymond Cowin. Officer Cowin also testified that he observed defendant driving "extremely fast" and erratically. Specifically, Officer Cowin explained that defendant was traveling north in the southbound lane and weaving between the lanes of traffic. As defendant was weaving from the southbound lane into the far right northbound lane, he "sideswiped" Officer Cowin's Cadillac. Defendant then drove in front of Officer Cowin and rear-ended a vehicle that was stopped at the traffic light.

That vehicle was driven by Jeffrey Mattison, who testified that he first observed defendant in his rearview mirror as defendant "sideswiped" Officer Cowin's white Cadillac. Mattison also observed defendant "weave in and out all over the road" before entering Mattison's lane and rear-ending his car. Mattison explained that the impact of defendant rear-ending his car sent it "flying through the intersection." Officer Cowin observed that defendant's brake lights did not illuminate before defendant struck Mattison's car. In addition, defendant did not stop after striking Mattison's car once but, rather, proceeded to strike it two or three more times. Officer Cowin parked his vehicle behind defendant's and got out to investigate.

According to Moya, who had stopped at the light next to Mattison in the right northbound lane, defendant began driving back and forth between Mattison's and Officer Cowin's cars, striking each vehicle twice more. Moya became worried that defendant was trying to flee

the scene and that defendant would turn right and strike his car.

When Officer Cowin looked into defendant's car, defendant still had the car in drive and was pushing the gas pedal to the floor. Officer Cowin also observed that defendant's nose was bloody and that he smelled strongly of alcohol. Defendant was also continuously muttering, "what I do, what I do." Officer Cowin reached through the window of defendant's car to try to put it into park because defendant's car was still pushing Mattison's car farther and farther into the intersection. However, defendant began struggling with Officer Cowin, even after Officer Cowin identified himself as a police officer.

At this point, Mattison exited his vehicle to help Officer Cowin. While Officer Cowin struggled with defendant, Mattison was able to reach into defendant's car and turn off the ignition. In doing so, Mattison also noticed that defendant smelled strongly of alcohol. In addition, Mattison noticed that defendant's nose was bloody and the car's air bag had deployed.

Officer Cowin then removed defendant from his car and attempted to get defendant down onto the ground. Defendant continued to resist, still muttering, "what I do, what I do." Officer Cowin added that defendant appeared incoherent. Officer Cowin testified that he never struck defendant, and Mattison and Moya also testified that they never saw Officer Cowin strike defendant.

Officer Cowin has been a police officer for 27 years, has observed thousands of people under the influence of alcohol, and has written approximately 30 DUI citations. Based on defendant's driving, his strong smell of alcohol, and his demeanor in general, Officer Cowin believed that defendant was under the influence of alcohol and that defendant's driving had been

impaired by the amount of alcohol that he had consumed. Mattison also believed that defendant was under the influence of alcohol and that defendant was attempting to flee the scene after the accident.

Shortly thereafter, Harwood Heights police arrived at the scene. Officer Steve Biagi asked defendant if he had been involved in an accident. Defendant replied that he had and explained that he hit a vehicle that stopped suddenly in front of him. Officer Biagi noticed that defendant emitted a strong smell of alcohol.

Defendant was then transported to the hospital. Officer Biagi spoke with defendant there approximately 30 minutes later. At that time, Officer Biagi still smelled a strong odor of alcohol on defendant's breath. Defendant was also walking around and swaying from side to side as he did. In addition, defendant was slurring his speech, and his eyes appeared glassy and bloodshot. Officer Biagi added that during his six-year career as a police officer, he has observed hundreds of people under the influence of alcohol. Based on his observations of defendant, he believed that defendant was under the influence of alcohol.

Officer Biagi asked defendant if he had been injured, and defendant indicated that he had not. Officer Biagi also asked defendant if he had been drinking, which defendant denied. Officer Biagi then asked defendant if he would take sobriety tests, and defendant responded that he could not because he could not get another DUI. Officer Biagi then advised defendant that he would be charged with DUI and wrote out defendant's traffic citations. In total, Officer Biagi was with defendant at the hospital for about an hour, and during that time, defendant continued to appear to be under the influence of alcohol.

After defendant signed a refusal of medical treatment, Officer Biagi transported him to the police station. Even after defendant had been "booked" and placed in the lockup, which was nearly two hours after the accident, he continued to smell strongly of alcohol and continued to appear intoxicated to Officer Biagi.

The parties subsequently stipulated to the admission of a certified copy of a driving abstract of defendant.[2] They also stipulated to a June 14, 2005, court order rescinding the summary suspension of defendant's driving privileges resulting from his March 2005 DUI arrest. The order indicated that the rescission was warranted because the officer failed to give defendant the appropriate warnings prior to his refusal to submit to sobriety testing. The parties further agreed that the order was admitted solely for the purpose of establishing the DUI as an aggravated DUI and not as a defense to driving while defendant's driving privileges were suspended.

At the conclusion of the evidence, the trial court found defendant guilty of aggravated DUI. The court noted that although no sobriety tests were administered to defendant, his intoxication was "obvious" based on the cumulative testimony of the witnesses, who all testified that defendant was driving erratically and smelled strongly of alcohol. The court also noted that

---

[2]Defendant's driving abstract is not contained in the record on appeal. Because the appellant bears the burden to present a sufficiently complete record to the appellate court for review, we will construe this inadequacy of the record against defendant. See, e.g., Foutch v. O'Bryant, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984). Notwithstanding the missing driving abstract, defendant's presentence investigation report discloses that he was arrested for DUI on March 3, 2005 and that a statutory summary suspension commenced 46 days later on April 18, 2005 per section 11-501.1(g) of the Illinois Vehicle Code. 625 ILCS 5/11-501.1(g) (West 2004).

6

defendant struck multiple vehicles and continued to strike Mattison's vehicle without even knowing what he was doing. After finding defendant guilty, the trial court sentenced him to 10 days of imprisonment in the Cook County Department of Corrections and 30 months of probation, and ordered him to pay a total of $2,950 in fines and costs.

Defendant filed a posttrial motion contending, *inter alia*, that his aggravated DUI conviction must be vacated because the suspension in force at the time of his offense was later rescinded. The trial court denied that motion, and defendant filed the present appeal.

Defendant first contends that he could not have been found guilty of aggravated DUI as a matter of law because his suspension for the March 2005 DUI was rescinded. He claims that the rescission rendered that suspension void *ab initio*. Because this issue presents a question of law and involves statutory interpretation, our review is *de novo*. People v. Karmatzis, 373 Ill. App. 3d 714, 718, 871 N.E.2d 118, 121 (2007).

Section 11-501 of the Illinois Vehicle Code prohibits individuals from driving any vehicle within the state of Illinois while under the influence of alcohol. 625 ILCS 5/11-501 (West 2004); see also People v. Schaefer, 154 Ill. 2d 250, 254, 609 N.E.2d 329, 331 (1993). Violators are subject to both criminal penalties and civil sanctions. Schaefer, 154 Ill. 2d at 254-55, 609 N.E.2d at 331. The criminal penalties range, depending on various factors, from punishment as a Class A misdemeanor, which is punishable by imprisonment for up to one year (730 ILCS 5/5-8-3(a)(1) (West 2004)), to a Class 2 Felony, which is punishable by three to seven years' imprisonment (730 ILCS 5/5-8-1(a)(5) (West 2004)), plus various fines and costs (625 ILCS 5/501 (West 2004)).

Significantly, DUI is a strict liability offense, requiring no intent. People v. Ziltz, 98 Ill. 2d 38, 42, 455 N.E.2d 70, 72 (1983). The supreme court has explained that strict liability for DUI comports with due process because the State has a rational basis for curbing the incidence of drunk driving. Ziltz, 98 Ill. 2d at 43, 455 N.E.2d at 72. Because the purpose behind the offense of aggravated DUI remains the same, aggravated DUI is also a strict liability offense. See People v. Avery, 277 Ill. App. 3d 824, 830, 661 N.E.2d 361, 365 (1995) (holding that aggravated DUI predicated upon being involved in a motor vehicle accident in which another suffered great bodily injury was a strict liability offense). Driving on a suspended or revoked license is also a strict liability offense. People v. Van Cura, 49 Ill. App. 3d 157, 159, 364 N.E.2d 564, 565-66 (1977). Thus, "[t]he defendant's intent, knowledge, moral turpitude or motive is immaterial," and "[t]he only intention necessary to render [him] liable to a [criminal] penalty for violation of the automobile law is the doing of the act prohibited." People v. Strode, 13 Ill. App. 3d 697, 698, 300 N.E.2d 323, 325 (1973).

The civil sanction is a statutory summary suspension of the defendant's driving privileges. 625 ILCS 5/501.1 (West 2004); People v. Orth, 124 Ill. 2d 326, 337, 530 N.E.2d 210, 215 (1988). The imposition of the statutory summary suspension is an administrative function of the Secretary of State, which licenses and regulates the activity of driving. Schaefer, 154 Ill. 2d at 256, 609 N.E.2d at 331. In essence, the suspension is imposed because a driver has violated the standards of conduct and the conditions governing the driver's license. People v. Dvorak, 276 Ill. App. 3d 544, 551, 658 N.E.2d 869, 876 (1995). Specifically, the Secretary of State will summarily suspend the driving privileges of first-time offenders who fail sobriety tests for three

months, and for repeat offenders who fail sobriety tests, the Secretary of State will suspend driving privileges for one year. 625 ILCS 5/6-208.1 (West 2004). Further, section 11-501.1 of the Vehicle Code provides that "[a]ny person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent" to sobriety testing. 625 ILCS 5/11-501.1(a) (West 2004); see also Schaefer, 154 Ill. 2d at 255, 609 N.E.2d at 331. Accordingly, if an individual detained for suspected DUI refuses to submit to sobriety testing, the statutory summary suspensions are longer: one year for first-time offenders and three years for repeat offenders. 625 ILCS 5/6-208.1 (West 2004).

Significantly, a license to drive, once issued, is a property interest which may not be suspended or revoked without due process of law. People v. Esposito, 121 Ill. 2d 491, 504, 521 N.E.2d 873, 879 (1988). However, in contrast to the crime of DUI, which impacts a defendant's personal liberty, due process does not require an evidentiary hearing prior to the statutory summary suspension taking effect. People v. Esposito, 121 Ill. 2d 491, 504, 521 N.E.2d 873, 879 (1988). Rather, the Vehicle Code affords a driver sufficient due process by allowing a driver to obtain a limited civil hearing to challenge a summary suspension. 625 ILCS 5/2-118.1(b) (West 2004); Esposito, 121 Ill. 2d at 507, 521 N.E.2d at 880. According to the Vehicle Code, the driver may file a written request for a judicial hearing in the circuit court of venue within 90 days of receiving notice of the suspension. 625 ILCS 5/2-118.1(b) (West 2004). The court must then hold a hearing within 30 days of the receipt of the request. 625 ILCS 5/2-118.1(b) (West 2004). However, the statutory summary suspension does not take effect until 46 days after the driver has received notice thereof. 625 ILCS 5/11-501.1(g) (West 2004).

1-06-0868

Accordingly, a driver may stop an improper suspension from ever taking effect by filing a petition for rescission within two weeks of his DUI arrest. See 625 ILCS 5/2-118.1(b) (West 2004). This will allow the court the maximum 30 days in which to rule on the petition prior to the effective date of the suspension. See 625 ILCS 5/2-118.1(b) (West 2004). However, the Vehicle Code specifically provides that any "[scheduled] judicial hearing, [filed] request, or process shall not stay or delay the statutory summary suspension." 625 ILCS 5/2-118.1(b) (West 2004). This means that unless the court enters an order rescinding the suspension within 45 days of a defendant's DUI arrest, the suspension will take effect, regardless of whether a petition to rescind is pending. As a result, if the driver waits too long to file his petition to rescind, even if that petition is filed within the required 90 days of the date of the driver's DUI arrest, the suspension will still take effect on the forty-sixth day following the driver's arrest. See 625 ILCS 5/2-118.1(b) (West 2004). Thus, whether a driver will suffer the effects of an improper suspension depends largely on the driver's diligence in requesting a hearing after receiving notice of the suspension. Esposito, 121 Ill. 2d at 507, 521 N.E.2d at 880.

It is also important to emphasize that criminal DUI charges are separate from the remedial civil sanction of the suspension. The suspension is not designed to punish, but rather, to protect others who travel on the public highways of Illinois by temporarily suspending an offending driver's driving privileges. People v. Lavariega, 175 Ill. 2d 153, 157, 676 N.E.2d 643, 645 (1997); see also Schaefer, 154 Ill. 2d at 257-58, 609 N.E.2d at 332; Koss v. Slater, 116 Ill. 2d 389, 395, 507 N.E.2d 826, 829 (1987). To that end, if a driver requests a hearing on the suspension, that hearing will be a civil proceeding. 625 ILCS 5/2-118.1(b) (West 2004); Orth,

10

124 Ill. 2d at 337, 530 N.E.2d at 215. Thus, double jeopardy does not bar a criminal prosecution for DUI following the imposition of the statutory summary suspension. Lavariega, 175 Ill. 2d at 158, 676 N.E.2d at 645. In addition, the dismissal of a criminal charge does not result in an automatic rescission of the suspension. Schaefer, 154 Ill. 2d at 257-58, 609 N.E.2d at 332.

In People v. Focia, 287 Ill. App. 3d 767, 679 N.E.2d 121 (1997), the Third District considered what effect a rescission has on a suspension that has already taken effect. In that case, the defendant was charged with DUI on January 13, and her suspension took effect on March 1. Focia, 287 Ill. App. 3d at 768, 679 N.E.2d at 122. She subsequently filed a petition to rescind the suspension. Focia, 287 Ill. App. 3d at 768, 679 N.E.2d at 122. However, before that petition was heard, the defendant received a ticket for driving on a suspended license pursuant to section 6-303 of the Vehicle Code (625 ILCS 5/6-303 (West 1996)). Focia, 287 Ill. App. 3d at 768, 679 N.E.2d at 122. The court ultimately rescinded the defendant's suspension, and the defendant contended that she could, therefore, not be guilty of driving on a suspended license. Focia, 287 Ill. App. 3d at 768, 679 N.E.2d at 122.

On appeal, the Third District held that the rescission of the suspension was not to be applied retroactively. Focia, 287 Ill. App. 3d at 769, 679 N.E.2d at 123. The majority explained that the statutory scheme in the Vehicle Code implied a legislative intent that the suspension was to have full force and effect until it was proven to be invalid. Focia, 287 Ill. App. 3d at 769, 679 N.E.2d at 123. The majority also noted that to hold otherwise would be to permit a defendant to delay filing a petition to rescind the suspension. Focia, 287 Ill. App. 3d at 769, 679 N.E.2d at 123. A specially concurring opinion also pointed out that to prove that a defendant was driving

on a suspended license, the State was only required to prove that the defendant was driving at a time when her license was suspended; the State was not required to disprove the existence of a rescission. Focia, 287 Ill. App. 3d at 770, 679 N.E.2d at 124 (Lytton, J., specially concurring).

The dissenting opinion in Focia found that "a rescission is by definition retroactive," focusing on one meaning of the word "rescind," namely, " 'to void, repeal * * * nullify.' [Citation.] " Focia, 287 Ill. App. 3d at 771, 679 N.E.2d at 124 (Holdridge, J., dissenting). The dissent also questioned how the 45-day delay of the commencement of the suspension effectuates the goal of getting drivers likely to commit DUI off the road. Focia, 287 Ill. App. 3d at 771, 679 N.E.2d at 124 (Holdridge, J., dissenting).

We are not persuaded by the rationale in the dissent for two reasons. First, the 45-day time delay is part of a broader statutory scheme that affords a driver the requisite due process before the driver's property interest in his driver's license is suspended. See Esposito, 121 Ill. 2d at 504, 521 N.E.2d at 879. By delaying the effective date of the suspension 45 days, the legislature effectively provided drivers with an opportunity to stop an improper suspension from ever taking effect. See 625 ILCS 5/2-118.1(b) (West 2004). However, if the driver delays filing a petition to rescind such that there is not enough time for the court to rescind it prior to the forty-sixth day after the defendant's arrest, the suspension will take effect on that date, even if there is a petition to rescind pending. See 625 ILCS 5/2-118.1(b) (West 2004). Thus, the window of opportunity afforded a defendant to seek rescission of his suspension prior to its effective date is brief, and the law is clear that the suspension will take effect on day 46 and remain in effect until it ends or is rescinded. See 625 ILCS 5/2-118.1(b) (West 2004). Without

the 45-day delay, it is unclear whether the Secretary of State could summarily suspend a driver's driving privileges without offending due process. See Esposito, 121 Ill. 2d at 506-07, 521 N.E.2d at 880 (finding the 45-day time delay to be significant because the statutory scheme only requires that trial court conduct a hearing on a petition to rescind within 30 days, as opposed to within some shorter time frame).

Second, the summary suspension affects only a driver's license as conferred by the Secretary of State. Thus, a rescission only impacts a driver's driving privileges. Indeed, where a suspension has been rescinded, a driver may still be criminally convicted of DUI. See People v. Gerke, 123 Ill. 2d 85, 95, 525 N.E.2d 68, 73 (1988); People v. Schuld, 175 Ill. App. 3d 272, 284, 529 N.E.2d 800, 807 (1988). Because this is a function of the Secretary of State, the definition of the term "rescission" is located in the Illinois Administrative Code, which defines rescission as "to annul or void a suspension, revocation, cancellation or denial." 92 Ill. Adm. Code §1040.100(a), amended at 25 Ill. Reg. 6402 (eff. April 26, 2001). This definition describes the effect of the rescission on a defendant's driving privileges and driving record. For instance, the record in this case discloses that after defendant's suspension resulting from his March 3, 2005 DUI arrest was rescinded, he was issued an amended notice of suspension for the suspension applicable here which changed his status from a repeat offender to a first-time offender.

However, this definition of rescission must be limited to that purpose. Examination of the procedure set forth in the Vehicle Code makes clear that unless a suspension is rescinded prior to its effective date, the suspension is to take effect and remain in effect for the prescribed duration or until it is rescinded. See 625 ILCS 5/2-118.1(b), 6-208.1(a) (West 2004). Indeed, in

13

construing a statutory scheme, the court's goal is to ascertain and give effect to the intent of the legislature. People v. Perry, 224 Ill. 2d 312, 323, 864 N.E.2d 196, 204 (2007). As the majority in Focia recognized, to apply the rescission retroactively would be to ignore the time frame established by the legislature in section 2-118.1(b) of the Vehicle Code. Focia, 287 Ill. App. 3d at 769, 679 N.E.2d at 123.

As the majority in Focia also emphasized, to apply rescissions retroactively would be to condone a defendant's delay in seeking the rescission. Focia, 287 Ill. App. 3d at 770, 679 N.E.2d at 124. This rationale is particularly significant here. Defendant's suspension took effect on April 18, 2005. He was arrested for the present aggravated DUI on May 9, 2005. His suspension was not rescinded until June 14, 2005. Because the circuit court must conduct a hearing on a defendant's petition to rescind a suspension within 30 days (625 ILCS 5/2-118.1(b) (West 2004)), the earliest date on which defendant could have filed his petition to rescind the suspension was May 14, 2005, which was five days after his arrest for aggravated DUI. To accept defendant's argument and to apply a rescission retroactively would be to condone defendant's choice to ignore his suspension, drive drunk, and be charged with aggravated DUI before deciding to petition for rescission of the suspension.[3]

---

[3]Defendant attached a copy of his petition to rescind his first suspension to his petition for rehearing, which was file-stamped May 4, 2005. Because this document was not included in the record on appeal, it is not properly before this court. See, e.g., People v. Benson, 256 Ill. App. 3d 560, 563, 627 N.E.2d 1207, 1209 (1994) (explaining that items attached to briefs that are not included in the record on appeal cannot be used to supplement the record and cannot be considered). Nevertheless, even if we were to consider it, it would not affect our conclusion. It still shows that defendant made the choice to wait until after his suspension took effect to seek rescission and made the choice to drive drunk while his suspension was still in effect. The fact that defendant may have caused the delay in the hearing (see, e.g., People v. Smith, 172 Ill. 2d

1-06-0868

Thus, because the Secretary of State has the authority to enter statutory summary suspensions (see 625 ILCS 5/501.1 (West 2004); Schaefer, 154 Ill. 2d at 256, 609 N.E.2d at 331) and because even an improper statutory summary suspension will take effect unless and until the defendant acts to annul it (see 625 ILCS 5/2-118.1(b) (West 2004)), we cannot say that an improper suspension is void *ab initio*. Rather, an improper statutory summary suspension is merely voidable. See, e.g., In re Marriage of Mitchell, 181 Ill. 2d 169, 174, 692 N.E.2d 281, 284 (1998) (explaining that an order is void where it is entered without authority, but an order is voidable where it is erroneous or improper); see also Black's Law Dictionary 1568 (7th ed. 1999).

Because the statutory summary suspension is voidable, and not void, and because aggravated DUI is a strict liability offense, the fact that defendant's suspension was ultimately rescinded does not provide him with a defense here. Defendant's suspension was in full force and effect on May 9, 2005, because he had not yet succeeded in having it rescinded. Therefore, defendant could properly be convicted of aggravated DUI as a matter of law.

Defendant next contends that the State failed to prove him guilty of aggravated DUI beyond a reasonable doubt. Specifically, he claims that he was not intoxicated and that his erratic driving and apparent disorientation were due to his having been injured in the accidents.

Where a defendant challenges the sufficiency of the evidence to sustain his conviction, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the

289, 295, 665 N.E.2d 1215, 1218 (1996)) or may have abandoned his right to have the hearing conducted within 30 days of the date of the filing of his petition (see, e.g., People v. Lagowski, 273 Ill. App. 3d 1012, 1016, 653 N.E.2d 1, 4 (1995)) does not affect our conclusion.

15

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Campbell, 146 Ill. 2d 363, 374, 586 N.E.2d 1261, 1265-66 (1992). The reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact; therefore, a conviction will not be set aside unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of defendant's guilt. Campbell, 146 Ill. 2d at 374, 586 N.E.2d at 1266.

"Sections 11-501(a)(1) and (a)(2) of the Illinois Vehicle Code provide that a person commits DUI when he drives any vehicle within this state while 'the alcohol concentration in the person's blood or breath is 0.08 or more' or when the person is 'under the influence of alcohol.' " People v. Hirsch, 355 Ill. App. 3d 611, 616, 824 N.E.2d 321, 325 (2005), quoting 625 ILCS 5/11-501(a)(1), (a)(2) (West 2004). The DUI becomes aggravated in several circumstances, including, as charged here, when a person commits it "during a period in which his or her driving privileges are revoked or suspended, where the revocation or suspension was for [a previous DUI]." 625 ILCS 5/11-501(c-1)(1) (West 2004). As we already explained, aggravated DUI is also a strict liability offense. See Avery, 277 Ill. App. 3d at 830, 661 N.E.2d at 365; Van Cura, 49 Ill. App. 2d at 159, 364 N.E.2d at 565-66. Thus, to sustain a charge of aggravated DUI here, the State was not required to prove that defendant had knowledge that his license was suspended at the time he committed the DUI.

The evidence adduced at defendant's trial established that on the date in question, defendant's driving privileges were suspended. Although the order to which the parties stipulated at trial indicated that the suspension was ultimately rescinded on June 14, 2005, as we explained

16

above, the suspension was still in effect when defendant was driving on May 9, 2005.

Further, although defendant refused to submit to chemical testing, four eyewitnesses observed defendant and believed him to be under the influence of alcohol. Moya, Mattison, and Officer Cowin each testified that they observed defendant driving extremely fast and erratically, swerving in and out of lanes and driving north in the southbound lanes of traffic. Additionally, each of these three eyewitnesses observed defendant striking other vehicles as he was driving. Ultimately, defendant rear-ended Mattison's car while Mattison was stopped at a red light. However, instead of defendant realizing what he had done, he continued to strike Mattison's car, pushing it further into the intersection. Mattison and Officer Cowin had to work together to turn off defendant's car and remove him from it. When they did, they both observed that defendant smelled strongly of alcohol. Defendant also continuously muttered, "what I do, what I do," indicating that he was too intoxicated to even realize what had happened.

Officer Biagi, who observed defendant during the two hours after the accident, also opined that defendant was under the influence of alcohol. Officer Biagi testified that in addition to smelling strongly of alcohol, defendant slurred his speech, swayed from side to side when he walked, and had glassy, bloodshot eyes. Defendant continued to appear intoxicated even after he was taken to the police lockup, roughly two hours after the accident, and refused medical treatment. This evidence is sufficient to establish that defendant was driving under the influence of alcohol during a period of time in which his driving privileges were suspended as a result of a previous DUI arrest in which he failed to submit to sobriety testing.

Although defendant claims that his erratic driving, slurred speech, and glassy, bloodshot

17

eyes were the result of being injured in the accident, defendant admitted to Officer Biagi at the hospital that he had not been injured in the accident. Moreover, it is the function of the trial court, and not this court, to weigh the evidence and to draw the reasonable inferences therefrom. Campbell, 146 Ill. 2d at 374, 586 N.E.2d at 1266. Although the trial court's determinations in this regard are not conclusive, they are entitled to great deference. People v. McCormick, 339 Ill. App. 3d 641, 647, 791 N.E.2d 112, 116 (2003). We do not find the trial court's conclusions here to be so unreasonable, improbable or unsatisfactory as to justify disturbing them.

Accordingly, we affirm defendant's conviction and sentence.

Affirmed.

QUINN, P.J., and CUNNINGHAM, J., concur.

## THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

## WLODZIMIERZ CIECHANOWSKI,

Defendant-Appellant.

### No. 1-06-0868

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: February 13, 2008**

### JUSTICE THEIS delivered the opinion of the court.

**Quinn, P.J., and Cunningham, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Thomas Fecarotta, Judge Presiding**

For APPELLANT,      Sherwin H. Zaban
                    1160 Lee Road
                    Northbrook, IL 60062

For APPELLEE,       Richard A. Devine, State's Attorney
                    James E. Fitzgerald, Assistant State's Attorney
                    Mary P. Needham, Assistant State's Attorney
                    Ljubica D. Popovic, Assistant State's Attorney
                    300 Richard J. Daley Center
                    Chicago, IL 60602