IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**
May 17, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0202

STEVEN O. DALE, ACTING COMMISSIONER OF THE
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Respondent Below, Petitioner

v.

BENJAMIN M. KNOPP,
Petitioner Below, Respondent

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Case No. 11-MISC-480

REVERSED

Submitted:  April 16, 2013
Filed:  May 17, 2013

Patrick Morrissey, Esq.
Attorney General
Janet E. James, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

Richard D. Smith, Jr., Esq.
Parkersburg, West Virginia
Attorney for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "'The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo*.' Syl. Pt. 1, *Martin v. West Virginia Division of Labor Contractor Licensing Board*, 199 W.Va. 613, 486 S.E.2d 782 (1997)." Syl. Pt. 1, *Miller v. Hare*, 227 W. Va. 337, 708 S.E.2d 531 (2011).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "'In giving effect to the plain language contained within W. Va. Code § 17C-5A-1a(e), a person pleading guilty or found guilty by a court or jury of driving under the influence of alcohol, controlled substances, or drugs, shall be considered 'convicted,' and the [DMV] Commissioner has a mandatory duty to revoke the person's license to operate a motor vehicle in the State of West Virginia as provided by W. Va. Code § 17C-5A-1a(a).' Syl. Pt. 2, *State ex rel. Stump v. Johnson*, 217 W. Va. 733, 619 S.E.2d 246 (2005)." Syl. Pt. 2, *Harrison v. Comm'r, Div. of Motor Vehicles*, 226 W. Va. 23, 697 S.E.2d 59 (2010)

4.      "'In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be

i

given their common, ordinary and accepted meaning in the connection in which they are used.' Syllabus point 1, *Miners in General Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982)." Syl. Pt. 4, *West Virginia Consol. Pub. Ret. Bd. v. Weaver*, 222 W. Va. 668, 671 S.E.2d 673 (2008).

5.      "Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. Pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

6.      "'Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous.' Syllabus Point 7, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975)." Syl. Pt. 4, *Hawkins v. West Virginia Dept. of Public Safety*, 223 W.Va. 253, 672 S.E.2d 389 (2008).

7.      "The judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute." Syl. Pt. 5, *CNG Transmission Corp. v. Craig*, 211 W.Va. 170, 564 S.E.2d 167 (2002).

8.    West Virginia Code § 17C-5A-1a(d) (2010) operates to preclude a mandatory license revocation upon conviction pursuant to West Virginia Code § 17C-5A-1a only if a driver has already completed a prior, actual period of revocation for the same offense.

WORKMAN, Justice:

Petitioner/respondent below, Steven O. Dale, Acting Commissioner of the Division of Motor Vehicles (hereinafter "the Commissioner," or "DMV," as appropriate),[1] appeals the Circuit Court of Kanawha County's January 3, 2012, order granting respondent/petitioner below, Benjamin Knopp's (hereinafter "Mr. Knopp") petition for writ of prohibition and dissolving the DMV's previous revocation of his drivers' license. The Commissioner asserts that the circuit court erred in its application of West Virginia Code § 17C-5A-1a(d) (2010) to reverse the license revocation; specifically, the Commissioner argues that this statute operates only to prohibit license revocation after a revocation for the same offense has previously been effectuated and the license subsequently reinstated. The Commissioner asserts that the circuit court erroneously applied the statute to prohibit a mandatory revocation where a previous order of revocation, stayed pending an administrative hearing, was rescinded due to lack of evidence at the administrative hearing.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred in granting the writ of prohibition and, therefore, reverse the order of the circuit court.

---

[1] Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, this Court has substituted Steven O. Dale, Acting Commissioner of the DMV, as petitioner, in lieu of his predecessor Joe E. Miller.

1

## I. FACTS AND PROCEDURAL HISTORY

On January 2, 2007, Mr. Knopp was arrested and charged with first offense driving under the influence of alcohol (hereinafter "DUI"). Upon receipt of information from the arresting officer, on January 11, 2007, the DMV notified Mr. Knopp that his license would be revoked for six months pursuant to West Virginia Code § 17C-5A-1 (2004),[2] effective February 15, 2007, unless a timely, written request for an administrative hearing was made. Mr. Knopp timely requested an administrative hearing, which was subsequently scheduled for April 23, 2007; as a result of the request for a hearing, the impending revocation was stayed by operation of West Virginia Code § 17C-5A-2(a) (2004).[3] At the hearing, the arresting officer did not appear; as a result, the Commissioner entered an order on May 11, 2007, concluding that, as a result of the failure of the officer to appear, "[t]he evidence in this matter does not prove" that Mr. Knopp drove under the influence and "[a]ccordingly, the Order of Revocation heretofore

---

[2] This statute provides for revocation upon the DMV's receipt of a written statement from a law enforcement officer upon completion of his or her DUI investigation and does not require a predicate criminal conviction.

[3] West Virginia Code § 17C-5A-2(a) provides, in pertinent part,

> [u]pon the written request of a person whose license to operate a motor vehicle in this State has been revoked or suspended under the provisions of section one [§ 17C-5A-1] of this article or section seven [§ 17C-5A-7], article five of this chapter, the Commissioner of the Division of Motor Vehicles shall stay the imposition of the period of revocation or suspension and afford the person an opportunity to be heard.

2

entered in this matter must be rescinded." The order then "reversed" the order of revocation and dismissed the case.

Eleven days later, on May 22, 2007, Mr. Knopp pled guilty to DUI. The magistrate clerk provided the DMV with notice of the guilty plea, whereupon the DMV again notified Mr. Knopp, this time pursuant to West Virginia Code § 17C-5A-1a (2004), that his license would be revoked for six months, effective October 31, 2007. Mr. Knopp claims that he did not receive this order of revocation, but only learned of it nearly four years later during a traffic stop in the summer of 2011.[4]

On October 21, 2011, Mr. Knopp filed a petition for writ of prohibition, requesting that the circuit court prohibit the revocation on the basis of West Virginia Code § 17C-5A-1a(d) (2010),[5] which provides: "The provisions of this section shall not apply if an order reinstating the operator's license of the person has been entered by the commissioner prior to the receipt of the transcript of the judgment of conviction." The circuit court found that the Commissioner's May 11, 2007, order "rescind[ing]" the previous administrative revocation served to "reinstate" Mr. Knopp's license and that

---

[4] Mr. Knopp's alleged non-receipt of the order of revocation is not at issue in this appeal.

[5] In its order, the circuit court referenced the 1994 version of the statute. However, the 2004 version of the statute was in effect at the time of the subject revocation; the 2010 version of the statute is now in effect. Regardless, it appears that subsection (d) has remained unaltered. Accordingly, our discussion will reference the 2010 version of the statute.

subsequent revocation was prohibited by operation of West Virginia Code § 17C-5A-1a(d). Accordingly, the circuit court effectively granted the writ of prohibition and entered an order dissolving the revocation order and reinstating Mr. Knopp's license. It is from this order that the Commissioner now appeals.

## II. STANDARD OF REVIEW

"'The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo*.' Syl. Pt. 1, *Martin v. West Virginia Division of Labor Contractor Licensing Board*, 199 W.Va. 613, 486 S.E.2d 782 (1997)." Syl. Pt. 1, *Miller v. Hare*, 227 W.Va. 337, 708 S.E.2d 531 (2011). Moreover, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995).

## III. DISCUSSION

The Commissioner makes only one assignment of error. He asserts that the circuit court erred in its interpretation and application of West Virginia Code § 17C-5A-1a(d) to the administrative revocation of Mr. Knopp's license upon notice of his guilty plea. The Commissioner asserts that West Virginia Code § 17C-5A-1a(d) serves only to prevent a driver from twice having his or her license revoked for the same offense; after a license has been revoked and *reinstated*, it cannot then be revoked again. The Commissioner contends that when the initial revocation order was "rescinded,"

4

respondent's license was not then "reinstated" as that term is used in the statute; rather, the impending revocation was simply abrogated and, as a result of the stay, was never effectuated. He argues that "reinstatement" of a license contemplates an actual period of revocation, at the end of which certain conditions must be met, i.e. completion of classes, payment of fees and costs, etc., before the license is "reinstated."

Mr. Knopp counters that "reinstatement" is defined as "to restore"; therefore, after the Commissioner rescinded the revocation, his license was "restored" or "reinstated." As such, he argues that the plain language of West Virginia Code § 17C-5A-1a(d) precludes the Commissioner's attempted revocation upon notice of conviction. He argues further that the Commissioner's May 11, 2007, order was "final"[6] and therefore not subject to a subsequent revocation.[7]

---

[6] Respondent does not, however, assert that the subsequent revocation was precluded by operation of *res judicata*.

[7] Respondent further argues that two cases—*State ex rel. Baker v. Bolyard*, 221 W. Va. 713, 656 S.E.2d 464 (2007), *superseded by statutory amendment,* W. Va. Code § 17C-5A-1a(e), *as recognized in Miller v. Wood*, 229 W.Va. 545, 729 S.E.2d 867 (2012), and *State ex rel. Stump v. Johnson*, 217 W. Va. 733, 619 S.E.2d 246 (2005)—are illustrative of the fact that a subsequent revocation upon notice of conviction may be effectuated *only if* an administrative revocation determination has not already been made.

We find both cases inapposite; neither case contains an analogous factual scenario, nor addresses the issue presented herein. In both *Baker* and *Stump*, the driver was subject to an administrative revocation, but *before* a decision was final in the administrative revocation, the driver received a notice of revocation pursuant to West Virginia Code § 17C-5A-1a. Moreover, Mr. Knopp properly concedes that West Virginia Code § 17C-5A-1a(d) was not addressed in those cases. Rather, *Baker* addressed the issue of whether (continued . . .)

5

An administrative drivers' license revocation is triggered as the result of one of two occurrences: 1) a written statement to the DMV from an investigating officer that a DUI has been committed, pursuant to West Virginia Code § 17C-5A-1; or 2) notice to the DMV that a person has pled to or been convicted of DUI, pursuant to West Virginia Code § 17C-5A-1a. After a DUI arrest, West Virginia Code § 17C-5A-1 requires an officer to provide a "Statement of Arresting Officer," to the DMV, which then triggers a license revocation pursuant to subparagraph (c), which provides:

> If, upon examination of the written statement of the officer and the tests results described in subsection (b) of this section, the commissioner determines that a person committed a[] [DUI] offense . . . the commissioner shall make and enter an order revoking or suspending the person's license to operate a motor vehicle in this State.

Upon receipt of the notice of revocation, a driver has the right to request an administrative hearing under West Virginia Code § 17C-5A-2(a). If a written request for hearing is received, the revocation is stayed and a hearing granted. *Id.*; *see also* W. Va. Code § 17C-5A-2(s). Critically, if the hearing examiner or Commissioner fails to find that an offense was committed, West Virginia Code § 17C-5A-2(s) mandates that the Commissioner "shall *rescind* his or her earlier order of revocation[.]" (emphasis added).

---

a *nolo contendere* plea could properly form the basis of a revocation pursuant to West Virginia Code § 17C-5A-1a. *Stump* addressed the issue of whether a prosecutor, as part of a plea bargain, could agree to prevent a law enforcement officer from presenting evidence at a revocation hearing.

West Virginia Code § 17C-5A-1a is activated upon a guilty plea to or conviction of DUI.  West Virginia Code § 17C-5A-1a(a) provides that "[i]f a person . . . is convicted for a[] [DUI] offense . . . the person's license to operate a motor vehicle in this state shall be revoked or suspended[.]"  West Virginia Code § 17C-5A-1a(c) further provides that, upon receipt of a "transcript of the judgment of conviction . . . the commissioner *shall* make and enter an order revoking the person's license to operate a motor vehicle in this state." (emphasis added).  With respect to the Commissioner's statutory duty upon receipt of notice of conviction, this Court has held:

> "In giving effect to the plain language contained within W. Va. Code § 17C-5A-1a(e), a person pleading guilty or found guilty by a court or jury of driving under the influence of alcohol, controlled substances, or drugs, shall be considered 'convicted,' and *the* [DMV] *Commissioner has a mandatory duty to revoke the person's license to operate a motor vehicle in the State of West Virginia* as provided by W. Va. Code § 17C-5A-1a(a)."  Syl. Pt. 2, *State ex rel. Stump v. Johnson*, 217 W. Va. 733, 619 S.E.2d 246 (2005).

Syl. Pt. 2, *Harrison v. Comm'r, Div. of Motor Vehicles*, 226 W. Va. 23, 697 S.E.2d 59 (2010) (emphasis added).  As indicated above, however, West Virginia Code § 17C-5A-1a(d) provides that "[t]he provisions of this section shall not apply if an order *reinstating* the operator's license of the person has been entered by the commissioner prior to the receipt of the transcript of the judgment of conviction." (emphasis added).

The circuit court below found that the *rescission* of the order revoking Mr. Knopp's license by the Commissioner after the administrative hearing was tantamount to a *reinstatement* of his license, such as to implicate West Virginia Code § 17C-5A-1a(d)

7

and thereby preclude a subsequent revocation upon conviction. Neither "rescission" nor "reinstatement" are statutorily defined in this context and this issue has not been addressed by this Court.[8]

> In that regard, this Court has held:
>
> "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syllabus point 1, *Miners in General Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982).

Syl. Pt. 4, *West Virginia Consol. Pub. Ret. Bd. v. Weaver*, 222 W.Va. 668, 671 S.E.2d 673 (2008). Moreover, "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. Pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959); *accord* Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning."). Finally,

---

[8] This precise issue was previously before this Court; however, the case was resolved on venue grounds. *See Williams v. West Virginia Div. of Motor Vehicles*, 226 W. Va. 562, 703 S.E.2d 533 (2010) (holding that petition for judicial review of revocation was in nature of a request for extraordinary relief and therefore should have been brought in Kanawha County).

8

> "[w]here a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." Syllabus Point 7, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975).

Syl. Pt. 4, *Hawkins v. West Virginia Dept. of Public Safety*, 223 W.Va. 253, 672 S.E.2d 389 (2008); *accord Sniffin v. Cline*, 193 W. Va. 370, 374 & n.8, 456 S.E.2d 451, 455 & n.8 (1995) (noting that deference must be afforded to reasonable and permissible construction of a statute by the DMV because it has "policymaking authority" with regard to the statute). Nevertheless, "[t]he judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute." Syl. Pt. 5, *CNG Transmission Corp. v. Craig*, 211 W.Va. 170, 564 S.E.2d 167 (2002).

Utilizing these guiding principles, we find little difficulty in agreeing with the Commissioner that West Virginia Code § 17C-5A-1a(d) operates only to preclude a driver from twice having his license revoked for the same offense. It is clear that under common, ordinary, and accepted usage, the "rescission" of the Commissioner's order revoking Mr. Knopp's license is not the equivalent of his license being "reinstated." Rather, "rescission" connotes that the *impending* revocation was simply withdrawn, having been given no force or effect due to the stay; therefore, the status or condition of his license had not been altered in any way. This accepted usage is reflected in the

9

Black's Law Dictionary definitions of the operative terms.[9] Black's defines "reinstate," in part, as "[t]o place again in a former state or position; to restore[.]" Black's Law Dictionary 1399 (9ᵗʰ ed. 2009). On the other hand, it defines "rescind," in part, as "[t]o abrogate or cancel . . . unilaterally or by agreement. . . . To make void; to repeal or annul[.]" *Id.* at 1420. As such, both the dictionary definitions and common understanding of these terms suggest, in the context of the statutes at issue, that to "rescind" an order of revocation is to abrogate it or to treat it as though it did not occur. "Reinstatement" of a license, on the other hand, implies restoring or reissuing the license to a "former state or condition," which requires necessarily some change in status from the "former state." In this context, the change of status is an actual period of revocation.[10]

---

[9] Other courts have likewise had occasion to define "rescind" in the DMV context, although typically in response to appellants seeking to vitiate an interim conviction of driving on a suspended license, where the suspension is subsequently "rescinded" for various reasons. These cases, in effect, deal with the retroactivity of the rescission, i.e. whether a subsequent rescission operates retroactively, thereby negating an element of the offense of driving on a suspended license. This issue is not presently before the Court. However, we note that in construing the term "rescission," most courts have relied upon the commonly understood, dictionary meaning of the word, as set forth *supra*. *See People v. Elliott*, 978 N.E.2d 742 (Ill. App. 2012); *People v. Ciechanowski*, 884 N.E.2d 714 (Ill. App. 2008); *People v. Focia*, 679 N.E.2d 121 (Ill. App. 1997); *State v. Stone*, 764 N.W.2d 545 (Iowa 2009).

[10] We have previously had occasion to apply the commonly understood meaning of these terms in the context of a civil service appeal. In *Hannah v. Mounts*, 2012 WL 5896738 (Nov. 21, 2012), this Court reviewed a civil service appeal wherein the lower court remanded the matter to the Civil Service Commission for findings as to whether a deputy sheriff's resignation was accepted by the Sheriff before it was rescinded by the (continued . . .)

Moreover, as the Commissioner argues, we agree that "reinstatement," as used elsewhere in the Code does, in fact, contemplate that a period of actual revocation must occur before a license is "reinstated." *See* W. Va. Code § 17B-3-6(c) (2009) (requiring payment of a fee before reinstatement following suspension under West Virginia Code § 17B-3-6(b)(1)-(3)). However, we also note that the term "reissuance"[11] appears to be used interchangeably with "reinstatement," particularly as pertains to the conditions precedent to reissuance of a license following a DUI suspension. Specifically, West Virginia Code § 17C-5A-3 (2010) is entitled, in part, "reissuance of license" and sets forth the minimum period which must elapse and conditions which must be fulfilled before a license may be reissued, based on the offense. Such conditions, for purposes of this case, include 1) successful completion of an "educational, treatment or

deputy. This Court found that the deputy's resignation was "void" if it was not accepted by the Sheriff before the deputy rescinded it and the deputy would "remain[] employed in his position as a deputy sheriff *as if he had never resigned.*" *Id.* at *3 (emphasis added). However, if the Sheriff accepted the resignation, the deputy was subject to potential "reinstatement" pursuant to West Virginia Code § 7-14-8. *Id.* at *2. This analysis reflects the commonly understood usage of the terms "rescission" and "reinstatement" set forth above. It demonstrates that reinstatement was unnecessary if the resignation was rescinded because rescission served to render the resignation without effect and therefore, no change in status resulted.

[11] This term is certainly more reflective of the actual procedure for regaining one's license after a revocation. A license must be "reissued"; the broader term "reinstated" could arguably suggest that a driver's previous license is simply re-activated, requiring no affirmative action on the part of the driver to obtain a proper license. However, this Court has made clear that a drivers' license is not automatically restored after a period of revocation ends; rather, a driver must undertake "the act of acquiring a new license to extinguish the status of an operator's license as revoked." *State ex rel. Hall v. Schlaegel*, 202 W. Va. 93, 99, 502 S.E.2d 190, 196 (1998).

rehabilitation" program; 2) payment of costs of such program; and 3) payment of revocation hearing costs. W. Va. Code § 17C-5A-3(g) and (g)(1).

Notably, West Virginia Code § 17C-5A-3(g)(1) further provides that a license which is suspended for six months--as in this case--may not be reissued until at least ninety days have elapsed "from the date of the initial revocation, during which time the revocation was *actually in effect*[.]" (emphasis added). This requirement that the revocation "actually [be] in effect" suggests that reissuance or "reinstatement" necessarily follows an *actual* period of revocation. The common-sense implication of this wording would suggest that "reissuance" or "reinstatement" is unnecessary if a revocation never became effective. As indicated above, an actual period of revocation did not occur in this case since the revocation was automatically stayed pending the administrative hearing, after which the revocation was rescinded. As such, both the ordinary meanings of "rescission" and "reinstatement," as well as the statutory scheme *in toto*, would suggest that the Commissioner's "rescission" of his order of revocation did not serve to "reinstate" Mr. Knopp's license for purposes of application of West Virginia Code § 17C-5A-1a(d). Rather, we hold that West Virginia Code § 17C-5A-1a(d) operates to preclude a mandatory license revocation upon conviction pursuant to West Virginia Code § 17C-5A-1a only if a driver has already completed a prior, *actual* period of revocation for the same offense.

12

Finally, we further find that this interpretation of West Virginia Code § 17C-5A-1a(d) gives effect to the underlying spirit and purpose of the administrative revocation laws. As this Court noted in *Shell v. Bechtold*, 175 W. Va. 792, 796, 338 S.E.2d 393, 396 (1985):

> The purpose of the administrative sanction of license revocation is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways. The revocation provisions are not penal in nature, and should be read in accord with the general intent of our traffic laws to protect the innocent public.

(citations omitted). To construe the statute at issue as respondent suggests and as the circuit court did would have the effect of allowing a driver, like Mr. Knopp, who pleads guilty to or is convicted of DUI, to escape any period of revocation if the driver is successful in thwarting the administrative revocation process. Such an interpretation is squarely at odds with the purpose of protecting the public, as expressed in *Shell*. Accordingly, we find that the circuit court erred in its interpretation and application of West Virginia Code § 17C-5A-1a(d) to reverse Mr. Knopp's mandatory revocation pursuant to West Virginia Code § 17C-5A-1a.

## IV. CONCLUSION

For the foregoing reasons, the January 3, 2012, order granting respondent's writ of prohibition, dissolving the Commissioner's order of revocation, and reinstating Mr. Knopp's drivers' license, is reversed.

Reversed.

13